# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| COMMONWEALTH OF PUERTO RICO, through its Attorney General,<br><br>Plaintiff,<br><br>v.<br><br>EXXON MOBIL CORPORATION; BP P.L.C.; CHEVRON CORPORATION; CHEVRON PHILLIPS CHEMICAL PUERTO RICO CORE, LLC; CONOCOPHILLIPS; SHELL PLC; STATION MANAGERS OF PUERTO RICO, INC.; TOTALENERGIES; and TOTALENERGIES MARKETING PR CORP.,<br><br>Defendants. | Civil Action No. 3:24-cv-01393<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND TO THE COURT OF FIRST INSTANCE, SAN JUAN SUPERIOR PART**<br><br>Hon. Aida M. Delgado-Colon<br><br>Action Filed: July 15, 2024 |

## THE COMMONWEALTH OF PUERTO RICO'S MOTION TO REMAND

**TO THE HONORABLE COURT:**

    **NOW COMES** the Commonwealth of Puerto Rico, respectfully requesting the Court to remand this matter to the Court of First Instance, San Juan Part, because the Complaint provides no basis for federal subject matter jurisdiction, *see* Certified Translation of Complaint, ECF 1-2 ("Compl."), and to award costs and expenses pursuant to 28 U.S.C. § 1447(c) because Defendants' Notice of Removal, ECF 1 ("NOR"), shows Defendants had no objectively reasonable basis to believe otherwise. Defendants' removal was frivolous for three reasons. First, binding precedent forecloses federal-officer jurisdiction. *Rhode Island v. Shell Oil Prods. Co.* ("*Rhode Island I*"), 979 F.3d 50, 60 (1st Cir. 2020); *Rhode Island v. Shell Oil Prods. Co.* ("*Rhode Island II*"), 35 F.4th 44, 53 n.6 (1st Cir. 2022) ("[W]e adhere to [*Rhode Island I*'s] rejection of federal-officer removal jurisdiction."). Defendants know this because a subset of them lost in *Rhode Island I* and *II*. Second, Defendants' purportedly new factual bases for federal-officer removal have already been

1

considered and repeatedly rejected by multiple courts. *See, e.g.*, *Anne Arundel Cnty. v. BP P.L.C.*, 94 F.4th 343, 346 (4th Cir. 2024).[1] Third, uniform caselaw—including the primary case Defendants rely on—holds that a hurricane is not a "sudden accident" that can support removal under the Multiparty, Multiforum Jurisdiction Act ("MMTJA"). *Nguyen v. ANPAC La. Ins. Co.*, 2006 WL 3714500, at *2–3 (E.D. La. Dec. 11, 2006) ("[T]he MMTJA does not provide for removal of these actions" because a hurricane is "not a 'sudden accident' under the MMTJA."), *cited at* NOR ¶ 170 n.134. Defendants had no reasonable basis to think this case was removable, and their 92-page NOR and 2,441 pages of exhibits serve no purpose but delay. The Court must remand to the Court of First Instance, and should award the Commonwealth its costs and fees.

## MEMORANDUM OF LAW

1. The Commonwealth sued Defendants in the Court of First Instance, asserting claims under the Laws of Puerto Rico. Compl. ¶¶ 36–75 (alleging violations of 12 LPRA §§ 8001 *et seq.*; 32 LPRA § 2761; Act No. 48-1930, Article 1802; 31 LPRA §§ 10801, 10803, 10807; 10 LPRA §§ 259, 268). Defendants removed, based on the federal officer removal statute and the MMTJA. NOR at 1. More than a dozen courts around the country have remanded materially similar cases involving many of the same Defendants. As the Fourth Circuit recently put it:

> [Defendants] in these cases display a real commitment to the maxim, "If at first you don't succeed, try, try, try again." In recent years, state and local governments have

---

[1] *See also Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122 (2d Cir. 2023); *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 2483 (2023); *Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 620 (2024); *Honolulu v. Sunoco LP*, 39 F.4th 1101 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2776 (2021); *Oakland v. BP PLC*, 2023 WL 8179286 (9th Cir. Nov. 27, 2023) (unpublished); *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1797 (2023); *Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144 (D.C. Cir. 2023); *Charleston v. Brabham Oil Co.*, 2023 WL 11867279 (D.S.C. July 5, 2023); *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31 (D. Mass. 2020); *New Jersey v. Exxon Mobil Corp.*, 2023 WL 4086353 (D.N.J. June 20, 2023); *Vermont v. Exxon Mobil Corp.*, 2024 WL 446086 (D. Vt. Feb. 6, 2024); *Cnty. of Multnomah v. Exxon Mobil Corp.*, 2024 WL 2938473 (D. Or. June 10, 2024); *City of New York v. Exxon Mobil Corp.* (*City of New York II*), 2024 WL 2091994 (S.D.N.Y. May 8, 2024).

> brought state-court lawsuits against energy companies, alleging they misrepresented and concealed information about their fossil fuel products in violation of state tort and consumer protection laws. The companies have sought—over and over and over—to remove the cases to federal court. By our count, that gambit has failed in at least ten cases already. The eleventh time is not the charm.

*Anne Arundel*, 94 F.4th at 346; *see generally* n.1, *supra*. This case is the same.

Without subject matter jurisdiction, "the case shall be remanded." 28 U.S.C. § 1447(c). And without any reasonable basis for removal, fees and costs are warranted. *Id.*; *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *City of New York II*, 2024 WL 2091994, at *11–12 (granting remand and awarding fees where some jurisdictional theories "had largely been decided by the Circuit" and others "were objectively absurd").

**I.   Defendants Do Not Satisfy the Elements of Federal-Officer Removal.**

2.   Uniform precedent—including binding First Circuit caselaw—precludes removal under the federal-officer statute in this case. *See* 28 U.S.C. § 1442(a)(1). A defendant removing under that law must establish "(1) that it was acting under a federal officer's authority, (2) that the charged conduct was carried out 'for or relating to' the asserted official authority, and (3) that it 'will assert a colorable federal defense to the suit.'" *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 34 (1st Cir. 2022) (cleaned up). Defendants cannot satisfy any of these elements.

**A.   The Commonwealth's Suit Is Not "For or Relating To" Defendants' Purported Federal Activities.**

**1.   The Commonwealth Has Disclaimed Injuries Arising from Sales of Specialized Fuels to the United States for Military and National Defense Purposes.**

3.   Federal courts credit "express disclaimer[s]" that "explicitly renounce claims upon which federal officer removal [is] based," *Puerto Rico v. Express Scripts, Inc.*, 2024 WL 4524075, at *7 (1st Cir. Oct. 18, 2024) (cleaned up), and have done so in other climate-deception cases, *e.g.*, *Hoboken*, 45 F.4th at 713 (affirming denial of federal-officer jurisdiction because disclaimers

3

materially identical to the Commonwealth's were "no ruse").[2] Disclaimers that "clearly carve out certain factual bases" for liability "such that any alleged injury could not have happened under the direction of a federal officer will prevent removal." *Express Scripts*, 2024 WL 4524075, at *8 (cleaned up). Here, the Complaint expressly disclaims "any recovery" for injuries "arising from the Defendants' supply of specialized, noncommercial fossil fuel products to the federal government for military and national defense purposes." Compl. ¶ 29. Remand is warranted because the Complaint does not place Defendants' sales of specialized military fuels at issue. There is thus no possibility that the Commonwealth "will hold [Defendants] liable for [any] official acts" supposedly undertaken as part of those sales.[3] *Express Scripts*, 2024 WL 4524075, at *7–8.

    4.    None of Defendants' case citations undermine the Commonwealth's disclaimer. NOR ¶¶ 151–53. The disclaimer was ineffective in *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 945 n.3 (7th Cir. 2020) because it facially contradicted the plaintiffs' theory of liability. But there is no such contradiction here. No disclaimer was at issue in *Nessel v. Chemguard, Inc.* at all. 2021 WL 744683 (W.D. Mich. Jan. 6, 2021). *Rhodes v. MCIC, Inc.* involved a so-called *jurisdictional* disclaimer that attempted to waive "any cause of action or claim for recovery that could give rise to federal subject matter jurisdiction." 210 F. Supp. 3d 778, 785–86 (D. Md. 2016). The Commonwealth's disclaimer, by contrast, "is not a jurisdictional disclaimer . . . but is instead a claim disclaimer that expressly disclaims the claims upon which federal officer removal was based." *Delaware*, 578 F. Supp. 3d at 635 (crediting analogous claim disclaimer and granting

---

[2] *Accord Annapolis v. BP PLC.*, 2022 WL 4548226, at *8 (D. Md. Sept. 29, 2022); *Delaware v. BP Am., Inc.*, 578 F. Supp. 3d 618, 635 (D. Del. 2022); *Minn. v. Am. Petroleum Inst.*, 2021 WL 1215656, at *11 (D. Minn. Mar. 31, 2021); *cf. Boulder*, 25 F.4th at 1272 (affirming remand based in part on disclaimer of "damages or abatement relief for injuries to or occurring on federal lands"); *Baltimore*, 31 F.4th at 218–19 (similar).

[3] *See also New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215, 227 (D.N.H. 2023) (rejecting federal-officer removal based on an "effective" disclaimer that "eliminates the connection between the State's broad statewide claims and 3M's production of [military-specification aqueous film-forming foam] for the United States military"); *Maine v. 3M Co.*, 2023 WL 4758816, at *10 (D. Me. July 26, 2023) (granting remand where plaintiff made "express, unambiguous, and plain" disclaimer of claims relating to class of products purportedly produced at military direction).

remand) (cleaned up). *Ballenger v. Agco Corp.* is irrelevant for the same reason. 2007 WL 1813821, at *1 (N.D. Cal. June 22, 2007) (rejecting attempt to disclaim "any claim . . . based on an act that was performed under specific direction of . . . any Officer of the United States.").

> **2.  As *Rhode Island I* Held, "There Is Simply No Nexus" Between Defendants' Charged Conduct and Their Alleged Conduct Under Federal Officers.**

5.  The disclaimer aside, Defendants' "charged conduct" as alleged was not "carried out 'for or relating to' the asserted federal authority." *Moore*, 25 F.4th at 34 (quoting 28 U.S.C. § 1442(a)(1)). The First Circuit rejected federal-officer removal in *Rhode Island I* because the defendants' charged conduct—their failure to warn and deceptive marketing of fossil fuels—was not alleged to be directed or influenced by federal officers. The court explained:

> Rhode Island is alleging the oil companies produced and sold oil and gas products in Rhode Island that were damaging the environment and engaged in a misinformation campaign about the harmful effects of their products on the earth's climate. . . . There is simply no nexus between anything for which Rhode Island seeks damages and anything the oil companies allegedly did at the behest of a federal officer.

979 F.3d at 60. Just as in *Rhode Island I*, the charged conduct in the Commonwealth's Complaint here is Defendants' "improper promotion of fossil fuel products, including the misrepresentation and concealment of known hazards associated with the intended use of those products." Compl. ¶ 27. Defendants point to a "connection" between their conduct "extracting and producing oil and gas" and the Complaint's supposed "attempt to impose liability . . . for that very same conduct," NOR ¶ 148, but that argument is futile. Defendants do not argue federal officers controlled or influenced their deceptive marketing practices, or their marketing at all. And because the actions they allegedly took under government direction each "involve fossil fuel production rather than concealment or misrepresentation of information about fossil fuel products, those activities fail to

5

show the required relatedness" to the Commonwealth's claims.[4] *Anne Arundel*, 94 F.4th at 349. Under binding First Circuit authority, there is no federal-officer jurisdiction here because this "charged conduct" shares no nexus with "the asserted federal authority" under which Defendants allegedly acted. *Moore*, 25 F.4th at 34; *see Rhode Island I*, 979 F.3d at 60.

6. Defendants nonetheless insist the Court "must credit" their misconstruction of the Commonwealth's claims as alleging liability based on Defendants' production of fossil fuels. NOR ¶ 148. But Defendants may not "freely rewrite the complaint and manufacture a cause of action explicitly disclaimed by Plaintiff and then ask the Court to accept their 'theory of the case' for purposes of removal." *Delaware*, 578 F. Supp. 3d at 636 n.21 (rejecting the same argument); *Honolulu v. Sunoco LP*, 2021 WL 531237, at *7 (D. Haw. Feb. 12, 2021) (similar, and granting remand), *aff'd*, *Honolulu*, 39 F.4th 1101. The First Circuit has held that "well-pleaded allegations" in a notice of removal should be construed in the defendant's favor where "the parties raise factual disputes about the scope of a defendant's federal obligations," *Express Scripts*, 2024 WL 4524075, at *9, but that rule is irrelevant because the Commonwealth does not challenge facts alleged in the NOR. The allegations fail to establish jurisdiction as a matter of law even if accepted in full.

### B. Defendants Have Not Acted Under a Federal Superior.

7. The Court can reject federal officer removal based on the nexus element alone. Federal officer removal would still be inappropriate even if Defendants could satisfy that element, however, because Defendants did not "act[] under" any federal officer. 28 U.S.C. § 1442(a)(1). Defendants have presented the same evidence they proffer here to various courts around the country, and every court to rule on the issue has held that Defendants did not act under a federal officer in any relevant manner. There is no reason to break from this unanimous caselaw.

---

[4] *See also, e.g.*, *Connecticut*, 83 F.4th at 145; *District of Columbia*, 89 F.4th at 156; *Minnesota*, 63 F.4th at 715.

8.     "[P]recedent and statutory purpose make clear that [a] private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007). The statute requires a "special relationship" that usually "involves subjection, guidance, or control" by a federal superior. *Id.* at 151, 157 (quotations omitted). A private firm's "compliance (or noncompliance) with federal laws, rules, and regulations" is not "acting under" a federal officer, even when the firm is "highly supervised and monitored" with "highly detailed" regulations. *Id.* at 153. "Government contractors may only remove when their relationship with the government 'is an unusually close one involving detailed regulation, monitoring, or supervision.'" *Express Scripts*, 2024 WL 4524075, at *12 (quoting *Watson*, 551 U.S. at 153). A "contractor is unlikely to meet the 'acting under' requirement if it sells the government an off-the-shelf commercial product or its relationship with the government is a typical, arms-length business deal." *Id.* (citing *Honolulu*, 39 F.4th at 1108–09).

9.     ***Operation of the Elk Hills Petroleum Reserve.*** Defendants rely on two agreements relating to Elk Hills. Neither establishes an acting-under relationship. The first, the 1944 Unit Plan Contract ("UPC") between Standard Oil and the U.S. Navy, NOR ¶¶ 67–73, is insufficient because, as the First Circuit explained in *Rhode Island I*, it allowed Standard Oil to "dispose of the oil [it] extracted as [it] saw fit," and did not subject Standard Oil to close government direction or control. 979 F.3d at 59–60; *see also, e.g.*, *San Mateo*, 32 F.4th at 758–59 (Elk Hills UPC did not establish acting-under relationship). The second, the Operating Agreement ("OA") between the Navy and Standard Oil relating to maintenance on the Navy's share of the reserve, NOR ¶¶ 74–81, does not support acting-under status because the federal government did not closely control Standard Oil's activities under the OA, as every court to evaluate it has held. *See, e.g.*, *Honolulu*, 39 F.4th at 1109 (holding that the OA permitted Standard Oil to "act at its discretion" and merely

7

"gave Standard Oil general direction—not 'unusually close' supervision").

10. **Federal Mineral Leases.** *Rhode Island I* suggested that Defendants' leases for oil and gas extraction rights on federal land do not create an "acting under" relationship because they contemplate "no 'close supervision' of this extraction or production of oil 'specially conformed to government use.'" 979 F.3d at 59. Defendants offer "additional evidence not before the court in *Rhode Island*" to rehabilitate the leases, "[m]ost notably, the declaration from Professor Priest." NOR ¶ 116. Multiple courts have rejected the same arguments based on the exact same evidence.

11. Professor Richard Priest's declaration, dated from more than three years ago, is recycled from the *Anne Arundel County* case, in which the district and circuit courts found federal officer removal improper. Dick Decl. Ex. 70; *Anne Arundel*, 96 F.4th 343; *see also Honolulu*, 39 F.4th at 1109 (Professor Priest's narrative "show[s] only a general regulation applicable to all offshore oil leases" and "not specific direction [or] supervision."). Fundamentally, Defendants' leases do not "impose close federal control," and require only "compl[iance] with run-of-the-mill regulations on oil and gas production," which "is not enough for federal jurisdiction." *Hoboken*, 45 F.4th at 713 (citing *Watson*, 551 U.S. at 152–53). "By winning bids for leases to extract fossil fuels from federal land in exchange for royalty payments, [Defendants are] not assisting the government with essential duties or tasks." *Boulder*, 25 F.4th at 1253.[5] And courts have unanimously rejected Defendants' separate dubious contention that Defendants' operation of those leases performs the role of a nonexistent hypothetical national oil company. NOR ¶ 114; *Honolulu*, 39 F.4th at 1108; *Delaware*, 578 F. Supp. 3d at 639 (similar).

12. **World War II and Korean War.** Defendants' activities during World War II and the Korean War are covered by the Commonwealth's disclaimer. They also pre-date the deceptive

---

[5] *Accord San Mateo*, 32 F.4th at 760; *Connecticut*, 83 F.4th at 143; *Baltimore*, 31 F.4th at 232; *Delaware*, 578 F. Supp. 3d at 638.

conduct alleged in the Complaint by multiple decades, and thus do not relate to the Commonwealth's claims. *See, e.g.*, *Anne Arundel*, 94 F.4th at 349; *Connecticut*, 83 F.4th at 144. In any case, the wartime directives Defendants rely on "are basically regulations," and Defendants' compliance with them did not subject them to close federal "direction or supervision." *Honolulu*, 39 F.4th at 1108; *Oakland II*, 2023 WL 8179286, at *2 ("As to the World War II claims, the evidence supplied by the [defendants] merely confirms their compliance with the law while executing arms-length business agreements to supply fuel and build fuel infrastructure.").

13. ***Specialized Military Fuels.*** The Commonwealth has disclaimed relief arising from Defendants' sales of specialized fuels to the military. Compl. ¶ 29; *cf.* NOR ¶¶ 48–62, 85. Regardless, those too are arm's-length transactions with no close government control. The government's purchase of a product only creates an "acting under" relationship with the supplier if the government "close[ly] supervis[es]" production, by, for example, "exercis[ing] intense direction and control over all written documentation" accompanying the product, or "maintain[ing] strict control over the [product's] development." *Baltimore*, 31 F.4th at 231 (cleaned up); *compare Moore*, 25 F.4th at 35–36 (acting-under element satisfied where "[t]he Navy oversaw every aspect of the design, construction, maintenance, and modernization of the submarine" it purchased).

14. Here, Defendants present unremarkable commercial agreements with no evidence of government control or supervision. *See, e.g.*, Dick Decl. Ex. 25 at 3–4 (Shell Oil contracts relating to OXCART program); *id.* Ex. 34 at 2–3 (Shell contracts for aviation fuel); *id.* Ex. 41 (BP contracts for aviation fuel). "[T]he specialized fuel contracts here are no more than 'arms-length business agreements,' and accordingly, the [defendants] were not 'acting under' federal officers." *Oakland II*, 2023 WL 8179286, at *2 (cleaned up).

15. ***Strategic Petroleum Reserve***. Defendants' argument that they acted under federal

9

officers by supplying fuel for and managing the Strategic Petroleum Reserve ("SPR"), NOR ¶¶ 24, 126–31, is also meritless. Multiple courts of appeals have held that Defendants' SPR activities do not support federal-officer jurisdiction because "Defendants did not act as government agents, there was not close direction or supervision, and Defendants' actions were more like an arm's-length business deal." *Honolulu*, 39 F.4th at 1108; *Connecticut*, 83 F.4th at 143 ("Exxon Mobil has made this very argument to five of our sister circuits, all of which have squarely rejected it.").

16. Finally, Defendants' activities under the Emergency Petroleum Allocation Act ("EPAA"), NOR ¶ 137, "are irrelevant here because the EPAA only controlled the allocation and distribution of *available* gasoline supplies" and "did not require fossil fuel companies to increase production levels." *Delaware*, 578 F. Supp. 3d at 636 n.22 (cleaned up).

### C. Defendants Have Not Alleged a Colorable Federal Defense.

17. Defendants' asserted federal defenses are irrelevant because they cannot satisfy the other statutory elements. *See Boulder*, 25 F.4th at 1254. Regardless, those purported defenses "fail to stem from official duties or are not colorable." *Honolulu*, 39 F.4th at 1110. Defendants' preemption and First Amendment defenses, NOR ¶¶ 159–65, 141–50, have nothing to do with their allegedly federal conduct. Their federal contractor defense, meanwhile, NOR ¶¶ 155–58, is not colorable because the Complaint does not allege any defect in military equipment.

## II. The Court Lacks Jurisdiction Under the MMTJA.

18. Defendants improperly removed under the MMTJA, 28 U.S.C. § 1441(e)(1)(B), claiming Hurricane María was an "accident" from which the cases *San Juan v. Exxon Mobil Corp.*, 23-cv-1608 (D.P.R.) and *Bayamón v. Exxon Mobil Corp.*, 22-cv-1550 (D.P.R.) (the "federal RICO cases"), plus the Commonwealth's action, all arise. NOR ¶¶ 167–172. But courts have unanimously held that a hurricane is not an "accident" for purposes of the MMTJA. *See, e.g.*,

*Racca v. La. Farm Bureau Mut. Ins. Co.*, 2006 WL 3905004, at *3 (E.D. La. Dec. 8, 2006).[6] The MMTJA is "construed narrowly and in favor of remand," such that "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction," and "all disputed questions of fact must be resolved in favor of the non-moving party." *Owens*, 2007 WL 609219 at *1. The burden is on Defendants, *Racca*, 2006 WL 3905004 at *1, which they fail to meet.

### A. Standard of Review

19. Congress "enacted the MMTJA to allow full consolidation of state and federal cases" arising from the same accident.[7] *Roby*, 464 F. Supp. 2d at 575. The statute provides district courts original jurisdiction over an action "involving minimal diversity . . . that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location," among other requirements. 28 U.S.C. §§ 1369(a)(1)–(3). And if a party is a defendant in a federal case that was, or could have been, brought under § 1369(a), it may remove state cases in which it is also a defendant arising from the same accident at a discrete location. 28 U.S.C. § 1441(e)(1)(B).

20. The MMTJA defines "accident" as "a sudden accident, or a natural event culminating in an accident, that results in death incurred at a discrete location by at least 75 natural persons." 28 U.S.C. § 1369(c)(4). But the term gains additional meaning in §§ 1441(e)(1)(B) and 1369(a). *See Racca*, 2006 WL 3905004 at *1–2. Specifically, the MMTJA requires the removed case to "arise[] from the same accident" as the federal case that could have been brought under § 1369(a). *See* 28 U.S.C. § 1441(e)(1)(B); *Racca*, 2006 WL 3905004, at *3; *Nguyen*, 2006

---

[6] *Accord, e.g.*, *Ho v. Colony Ins. Co.*, 2008 WL 145023, at *3 (E.D. La. Jan. 14, 2008); *The Plant Gallery, Inc. v. Hanover Ins. Co.*, 2007 WL 128831, at *3 (E.D. La. Jan. 17, 2007); *Holzenthal v. Essex Ins. Co.*, 2007 WL 9789634, at *4 (E.D. La. Feb. 6, 2007); *Owens v. Scottsdale Ins. Co.*, 2007 WL 609219, at *1 (E.D. La. Feb. 22, 2007); *Preston v. Tenet Healthsystem Mem'l Med. Ctr.*, 463 F. Supp. 2d 583, 591 (E.D. La. 2006); *Flint v. La. Farm Bureau Mut. Ins. Co.*, 2006 WL 2375593, at *3 (E.D. La. Aug. 15, 2006); *Roby v. State Farm Fire & Cas. Co.*, 464 F. Supp. 2d 572, 576 (E.D. La. 2006); *Salvaggio v. Safeco Prop. & Cas. Ins. Cos.*, 458 F. Supp. 2d 283, 289 (E.D. La. 2006); *Wood v. State Farm Fire & Cas. Co.*, 2006 WL 8557083, at *4 (E.D. La. Oct. 24, 2006).

[7] Defendants fail to explain their contradictory positions on case consolidation. They oppose consolidation in the federal RICO cases, *Bayamón*, 22-cv-1550, ECF 288, but seek it here to serve their removal goals.

WL 3714500 at *2 n.1, *3. Because § 1369(a) requires that the claims "arise[] from a single accident," the "same accident" referenced in § 1441(e)(1)(B) must also be "sudden," as required by § 1369(c)(4). *See* 28 U.S.C. §§ 1369(a) & (c)(4), 1441(e)(1)(B); *Racca*, 2006 WL 3905004 at *3; *Nguyen*, 2006 WL 3714500 at *2 n.1, *3. The types of "accident" Congress contemplated include a plane crash, boat crash, train wreck, nightclub fire, hotel fire, and toxic spill. 147 CONG. REC. H893-01 (2001); *Passa v. Derderian*, 308 F. Supp. 2d 43, 54 (D.R.I. 2004). They do not include hurricanes. *Racca*, 2006 WL 3905004 at *2.

### B. The Federal RICO Cases Could Not Have Been Brought Under § 1369(a), and the Commonwealth's Action Cannot Be Removed Under § 1441(e)(1)(B).

21. The federal RICO cases were not brought under § 1369(a). *Bayamón*, 22-cv-1550, ECF 205 (Amended Complaint); *San Juan*, 23-cv-1608, ECF 1 (Complaint). Defendants thus must demonstrate the federal RICO cases "could have been brought" under § 1369(a), and that those cases and this action all arise from the same, sudden, single accident at a discrete location where at least 75 people died. 28 U.S.C. §§ 1441(e)(1)(B), 1369. Defendants fail to do so.

#### 1. Hurricane María Was Not an MMTJA "Accident."

22. Courts have "consistently declined to extend jurisdiction under 28 U.S.C. §§ 1369 and 1441(e)(1) to cases arising out of" a hurricane. *Holzenthal*, 2007 WL 9789634 at *4; Section II & n.6, *supra*. The defendants in prior cases argued, as Defendants do here, that a hurricane itself is an "accident" or a "natural event culminating in an accident." NOR ¶¶ 168–172. Each court has disagreed, and remanded. *See, e.g.*, *Flint*, 2006 WL 2375593 at *3; *Nguyen*, 2006 WL 3714500 at *2; *Racca*, 2006 WL 3905004 at *2. Defendants' argument must share the same fate.

23. An accident must be *sudden*, 28 U.S.C. §§ 1369(c)(4), 1441(e)(1)(B), which hurricanes are not. *E.g.*, *Nguyen*, 2006 WL 3714500, at *2–3; *Racca*, 2006 WL 3905004, at *2. Tellingly, the case Defendants cite for the proposition that a hurricane can constitute an "accident,"

12

NOR ¶ 170 n.134, says exactly the opposite: "Hurricane Katrina was not a 'sudden accident' . . . . The multi-day development of the storm and ubiquitous warnings of its approach . . . contrast sharply with the types of mass accidents contemplated by Congress when it enacted the MMTJA." *Nguyen*, 2006 WL 3714500, at *2. Hurricane María, like Hurricane Katrina, was devastating but not "sudden." It began forming in the Atlantic Ocean during the week of September 10, 2017, reached hurricane status on the 17th, and made landfall on Puerto Rico on September 20.[8] A "natural event [itself] cannot constitute a 'sudden accident,'" moreover, because the MMTJA requires the removed case arise from a "natural event *culminating in* an accident." *Nguyen*, 2006 WL 3714500, at *2 (quoting 28 U.S.C. § 1369(c)(4)) (emphasis added); *see Racca*, 2006 WL 3905004 at *2; *Wood*, 2006 WL 8557083 at *3. The natural event thus must *cause* a sudden accident, like a levee failure, from which the case arises. *See Preston*, 463 F. Supp. 2d at 591. Defendants identify no such thing because this case simply does not arise from a sudden accident.

24.     Remand is also appropriate because a hurricane is not a *single* accident. *E.g.*, *Salvaggio*, 458 F. Supp. 2d at 289 (declining "to interpret the definition of 'accident' so perversely so as to categorize Hurricane Katrina itself as a single accident."); *Roby*, 464 F. Supp. 2d at 576. Hurricane María, like Hurricane Katrina, caused different types of devastation. The deadliest harms—from lack of clean water, energy, and passable roads—protracted over months, and were exacerbated by subsequent storms and earthquakes.[9] Defendants do not and cannot identify a "single accident" tying this case to the federal RICO cases.

---

[8] *See, e.g.*, National Oceanic and Atmospheric Administration ("NOAA"), National Weather Service, Major Hurricane Maria, Overview (last visited Sept. 25, 2024), https://www.weather.gov/sju/maria2017.

[9] The Longest Blackout in U.S. History: Hurricane Maria, US Army Corp of Engineers (last visited Sept. 27, 2024), https://www.usace.army.mil/About/History/Historical-Vignettes/Relief-and-Recovery/154-Hurricane-Maria; Julia Jacobo, *Puerto Rico's infrastructure still recovering from Hurricane Maria 7 years after the Category 4 storm devastated the island*, ABC NEWS (Sept. 19, 2024), https://abcnews.go.com/US/puerto-ricos-infrastructure-recovering-hurricane-maria-7-years/story?id=113672746.

25. Defendants likewise cannot show the Commonwealth's action and the federal RICO cases arise from the *same* accident. *Racca*, 2006 WL 3905004, at *3 (remanding when defendant "made no showing that any accident that may have caused the damage to [plaintiff] was the same accident as one involved in a [federal] case over which there is [alleged] jurisdiction under Section 1369"); *Nguyen*, 2006 WL 3714500, at *2 n.1, *3. The RICO plaintiffs were impacted terribly by Hurricane María, but not by the "same" accident at a discrete location, let alone the "same" accident underpinning the Commonwealth's claims. Defendants do not even hypothesize what that same single accident might be. NOR ¶¶ 167–172.

26. Without a viable "accident," the federal RICO cases could not have been brought under § 1369, and the Commonwealth's action cannot be removed under § 1441(e)(1)(B). *E.g.*, *Ho*, 2008 WL 145023 at *3. Even if Defendants were correct that the Commonwealth's suit arises from Hurricane María (it does not, *see* Section II.B.2, *infra*), remand would still be required.

### 2. This Case Arises From Defendants' Intentional Conduct.

27. Defendants separately fail under the MMTJA because this case does not "arise[] from" any accident at all, but rather from Defendants' intentional misconduct that occurred over decades and remains ongoing. *See, e.g.*, Compl. ¶¶ 5, 15, 17, 20–23, 27–28, 30. Defendants' deception was not an "accident" in any sense of the MMTJA. Rather, Defendants mischaracterize the Commonwealth's action as arising from Hurricane María.[10] NOR ¶¶ 170–72. But courts have remanded cases when a defendant removing under the MMTJA mischaracterizes the basis from which the complaint arises. *See Thompson v. Mixon*, 2007 WL 1550948, at *1, *3 (E.D. La. May 25, 2007) (remanding where defendant mischaracterized complaint as arising from hurricane when

---

[10] The Commonwealth's detailed Complaint, along with its Attachment A, refer to Hurricane María only twice. Compl. ¶¶ 16, 25. In both instances, the Commonwealth alleges Hurricanes Irma *and* María together resulted from Defendants' deceptive conduct and are harbingers for climate impacts yet to come. *See id.*

14

complaint actually arose from defendant's alleged deceit, misrepresentations, and failure to alert); *Jambon v. State Farm Fire & Cas. Co.*, 2006 WL 2850176, at *1, *3 (E.D. La. Oct. 4, 2006) (remanding where case actually arose from defendants' alleged negligence, not a hurricane). Defendants' mischaracterization of the Complaint cannot defeat remand.

### III. The Court Should Award Attorneys' Fees and Costs.

28. The Commonwealth requests costs and fees incurred in responding to Defendants' removal, as the district court recently ordered in *City of New York II*, 2024 WL 2091994, at *12. Fees are appropriate under 28 U.S.C. § 1447(c) when "the removing party lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141. Defendants had no objectively reasonable basis to believe this case was removable. First, First Circuit precedent forecloses federal-officer removal, and Defendants' exact arguments have been uniformly dismantled by courts around the country. Sections I, I.A, *supra*. Defendants had no reasonable basis to rely on stale materials numerous courts have found insufficient to support removal, Section I.B, *supra*, or to burden the Court with them. Second, Defendants' MMTJA removal was legally and factually unsupportable. Defendants did not attempt to allege facts to establish the statutory requirements for removal, underscoring how unreasonable their arguments are. *Cf. Scotiabank of Puerto Rico v. Sanchez-Castro*, 227 F. Supp. 3d 188, 195 (D.P.R. 2017) (awarding fees where "a minimal amount of research . . . would have revealed" removal arguments were untenable).[11]

**WHEREFORE**, the Commonwealth respectfully requests the Court to remand this action and award fees and costs incurred in litigating Defendants' unreasonable removal.

**RESPECTFULLY SUBMITTED**

---

[11] Moreover, Defendants failed to provide a copy of the complaint in the *Bayamón* action, which is essential to assessing removal under the MMTJA. *Conde Vidal v. Lakeshore Condo. Owners Assoc.*, 2018 WL 11476517, at *3 (D.P.R. Aug. 16, 2018) (awarding fees where, *inter alia*, "defendants filed a Notice of Removal without including key documents that were part of the State Court complaint").

**I CERTIFY**: That on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will notify case participants appearing in said system.

In San Juan, Puerto Rico, this 1st day of November, 2024.

By: S/ José A. Andréu Fuentes
José A. Andréu Fuentes
**BUFETE ANDRÉU & SAGARDÍA**
261 Ave. Domenech
San Juan, P.R. 00918-3518
Tel: (787) 754-1777
Email: jaf@andreu-sagardia.com

**SHER EDLING LLP**
Victor M. Sher (*pro hac vice forthcoming*)
Matthew K. Edling (*pro hac vice forthcoming*)
Katie H. Jones (*pro hac vice forthcoming*)
Chase S. Whiting (*pro hac vice forthcoming*)
Anthony M. Tohmé (*pro hac vice forthcoming*)
100 Montgomery St., Ste. 1410
San Francisco, CA 94104
Tel: 628-231-2500
Fax 628-231-2929
Email: vic@sheredling.com
          matt@sheredling.com
          katie@sheredling.com
          cwhiting@sheredling.com
          anthony@sheredling.com

*Attorneys for the Commonwealth of Puerto Rico*