**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| COMMONWEALTH OF PUERTO RICO, through its Attorney General, | Civil Action No. 3:24-cv-01393 |
| | Hon. Aida M. Delgado-Colon |
| Plaintiff, | Action Filed: July 15, 2024 |
| v. | **Oral Argument Requested** |
| EXXON MOBIL CORPORATION; BP P.L.C.; CHEVRON CORPORATION; CHEVRON PHILLIPS CHEMICAL PUERTO RICO CORE, LLC; CONOCOPHILLIPS; SHELL PLC; STATION MANAGERS OF PUERTO RICO, INC.; TOTALENERGIES; and TOTALENERGIES MARKETING PR CORP., | |
| Defendants. | |

**<u>OPPOSITION TO PLAINTIFF'S MOTION TO REMAND</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ...............................................................................................1

II.  ARGUMENT .....................................................................................................3

    A.  Defendants Properly Removed This Case Under The Federal Officer Removal Statute. ......................................................................................3

        1.  Defendants "Acted Under" Federal Officers And Agencies. ..........5

        2.  Defendants' Activities At The Direction Of Federal Officers Are "Related To" Plaintiff's Claims. .....................................................8

        3.  Any Attempt To Disclaim Injury Arising From The Sales Of Specialized Fuels To The United States Military Is Ineffective. ...10

        4.  Defendants Raise "Colorable Federal Defenses." .........................12

    B.  Defendants Properly Removed This Case Under The Multiparty, Multiforum Trial Jurisdiction Act ("MMTJA"). ........................................12

    C.  Defendants' Grounds For Removal Are Objectively Reasonable, And Plaintiff Is Not Entitled To Fees And Expenses. ........................................14

III.  CONCLUSION ................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Elec. Power Co. v. Connecticut,*
    564 U.S. 410 (2011)........................................................................................................11

*Baker v. Atl. Richfield Co.,*
    962 F.3d 937 (7th Cir. 2020) .................................................................................7, 8, 11

*Case v. ANPAC La. Ins. Co.,*
    466 F. Supp. 2d 781 (E.D. La. 2006)................................................................................14

*City of Charleston v. Brabham Oil Co., Inc.,*
    No. 2:20-CV-03579, Dkt. 157 (D.S.C. July 24, 2023) ...................................................15

*City of New York v. Chevron Corp.,*
    993 F.3d 81 (2d Cir. 2021).........................................................................................9, 11

*Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.,*
    996 F.3d 243 (4th Cir. 2021) ...........................................................................................7

*Cnty. of Multnomah v. Exxon Mobil Corp.,*
    2024 WL 1991554 (D. Or. Apr. 10, 2024) ....................................................................15

*Exxon Mobil Corp. v. United States,*
    2020 WL 5573048 (S.D. Tex. Sept. 16, 2020) ................................................................6

*Gov't of Puerto Rico v. Express Scripts, Inc.,*
    119 F.4th 174 (1st Cir. 2024)...............................................2, 3, 4, 5, 7, 8, 9, 10, 12

*Jambon v. State Farm Fire & Cas. Co.,*
    2006 WL 2850176 (E.D. La. Oct. 4, 2006) ...................................................................13

*Jefferson Cnty. v. Acker,*
    527 U.S. 423 (1999).....................................................................................................3, 8

*Martin v. Franklin Capital Corp.,*
    546 U.S. 132 (2005).......................................................................................................15

*Moor v. Alameda Cnty.,*
    411 U.S. 693 (1973).......................................................................................................13

*Moore v. Elec. Boat Corp.,*
    25 F.4th 30 (1st Cir. 2022).....................................................................................3, 5, 8, 12

*Passa v. Derderian,*
    308 F. Supp. 2d 43 (D.R.I. 2004) ...................................................................................14

*Illinois ex rel. Raoul v. 3M Co.,*
    111 F.4th 846 (7th Cir. 2024) ........................................................................................11

*Rhode Island v. Shell Oil Prods. Co.*,
   979 F.3d 50 (1st Cir. 2020) ............................................................................4, 6, 7, 9, 10

*Wallace v. La. Citizens Prop. Ins. Corp.*,
   444 F.3d 697 (5th Cir. 2006) ............................................................................14

*Watson v. Philip Morris Cos., Inc.*,
   551 U.S. 142 (2007) ............................................................................5, 7

**Statutes**

28 U.S.C. § 1369(a) ............................................................................13

28 U.S.C. § 1369(a)(2) ............................................................................13

28 U.S.C. § 1441(e)(1)(B) ............................................................................12, 14

28 U.S.C. § 1442 ............................................................................3

28 U.S.C. § 1442(a)(1) ............................................................................2, 8

## I.    INTRODUCTION

Federal jurisdiction exists under the federal officer removal statute because Plaintiff, the Commonwealth of Puerto Rico, seeks to impose liability for untraceable global greenhouse gas emissions, which encompass federal and nonfederal sources alike.  As explained in the Notice of Removal, Plaintiff "brings claims against Defendants seeking damages and equitable relief for 'impacts of climate change' it claims to have suffered or allegedly will suffer, such as sea level rise, extreme weather, and other natural phenomena, much of which it alleges stems from Hurricane María."  Notice of Removal ("NOR") ¶ 11 (quoting Compl. ¶ 23).  "The Complaint makes clear that Plaintiff seeks damages resulting from the *global* production, extraction, distribution, and sale of oil and gas products."  *Id.* ¶ 12.  "Plaintiff's claims center on Defendants' worldwide 'extract[ion]' and sale of 'fossil fuel products,' which Plaintiff alleges has caused 'emissions of carbon dioxide (CO2) and other emissions from those products' to 'skyrocket[].'"  *Id.* (quoting Compl. ¶ 19).  "These '[f]ossil fuel emissions,' in turn, 'are by far the main driver of global warming.'"  *Id.* (quoting Compl. ¶ 19).  "Thus, global 'greenhouse gas pollution from fossil fuel products,' according to the Complaint, has 'significant adverse impacts on the Earth's climate and sea level,' ultimately causing Plaintiff's alleged injuries."  *Id.* (quoting Compl. ¶ 20).  "Accordingly, Plaintiff's theory of liability necessarily depends on proof that Defendants' conduct led to increased production, sale, and consumption of oil and gas that in turn produced increased emissions and thus led to Plaintiff's climate change-induced injuries."  *Id.*  Plaintiff's Motion to Remand does not dispute any of this.

Nor does Plaintiff dispute that the "United States Department of Defense is . . . one of the world's largest users of petroleum fuels," or that "[f]or over a century, United States policy has expressly recognized the fundamental strategic importance of oil and gas to the Nation's economic well-being and national security."  NOR ¶ 1.  Indeed, Defendants include three of the top four fuel

suppliers to the U.S. military, *id.* ¶ 50, supplying fuel that is the "lifeblood" of the military, *id.*, and essential to national security and the economy. And Plaintiff does not dispute, and thus concedes, that "greenhouse gas emissions attributable to Defendants' production of oil and gas under the direction of the federal government have precisely the same alleged impact on Plaintiff as do emissions from any other source." *Id.* ¶ 151.

Accordingly, this case is removable under the federal officer removal statute. 28 U.S.C. § 1442(a)(1). Congress has provided defendants with a right to remove a suit against any person acting under a federal officer when the suit is related to acts under color of federal office. *Id.* Even aside from Plaintiff's concessions, recent controlling First Circuit precedent involving Plaintiff obligates the Court to credit Defendants' allegations and theory of the case. *See Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 184 (1st Cir. 2024). In any event, Defendants have provided much more than a theory and allegations. Rather, Defendants have presented significant evidence that the federal government directed Defendants to engage in substantial oil and gas production and distribution activities related to Plaintiff's claims and alleged injuries. Indeed, it is precisely the alleged effects of cumulative emissions from the use of fossil fuel products, including those supplied by Defendants to the federal government under federal direction and pursuant to federal specifications, that Plaintiff contends caused its injuries. Because Plaintiff's claims and alleged injuries are based on Defendants' global oil and gas production, distribution, and sales activities, including those performed under the direction of federal officers, Plaintiff cannot separate emissions from non-governmental fuel. This Court thus has federal officer removal jurisdiction.

This Court should also deny remand because federal jurisdiction exists under the Multiparty, Multiform Trial Jurisdiction Act (the "MMTJA"). Defendants are party to two cases filed in federal court that otherwise meet the MMTJA's requirements and this case arises from the same accident—

*i.e.*, Hurricane María.   While Plaintiff argues broadly that the MMTJA does not extend to hurricanes, there is no dispute that the MMTJA was intended to cover catastrophic events, whether man-made or natural, that caused widespread damage and fatalities of more than 75 people, and were a result—as Plaintiff alleges here—of Defendants' conduct.

## II.    ARGUMENT

### A.    Defendants Properly Removed This Case Under The Federal Officer Removal Statute.

The federal officer removal statute, 28 U.S.C. § 1442, authorizes removal where, as here, (1) Defendants "act[ed] under a federal officer's authority"; (2) the "suit" relates "to any act under color of federal office"; and (3) Defendants have a "colorable federal defense."  *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 34–35 (1st Cir. 2022).  The statute "must be liberally construed to give full effect to [its] purpose," which is "to ensure a federal forum in any case where a federal official *or private actors acting on that official's behalf* may raise a defense arising out of his official duties."  *Express Scripts*, 119 F.4th at 185 (cleaned up; emphasis altered).

The First Circuit's decision in *Express Scripts* confirms that removal is appropriate here. *Express Scripts* emphasized that courts "*must* 'credit' [the removing] party's 'theory of the case' for why removal under § 1442(a)(1) was appropriate."  119 F.4th at 184 (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999)) (emphasis added).  This deference extends to the removing party's "allegations" in the notice of removal.  *Id.* at 190.  Moreover, a plaintiff's purported disclaimer of relief relating to federally directed conduct is ineffective when, under the defendant's theory of the case, "its federal and non-federal work is indivisible."  *Id.* at 194.  Here, Defendants have demonstrated in the Notice of Removal that they have supplied fuel and performed other critical and necessary functions for the U.S. military to further the national defense, as well as taking other actions to achieve federal objectives under federal direction, supervision, and control. Defendants' theory of this case is that Plaintiff's alleged climate change related harms cannot be

traced to any specific statements or emissions but depend on *global* greenhouse gas emissions, necessarily implicating *all* of Defendants' production, extraction, distribution, and sales activities—including those undertaken under the direction, supervision, and control of the U.S. government. *See* NOR ¶¶ 3–4, 11–12, 21, 147–49; Compl. ¶¶ 15–22, 27; Compl. Attachment A ¶¶ 1–10.  And because these global emissions are impossible to trace to any particular source, and emissions from Defendants' activities performed under federal control are (as in *Express Scripts*) indivisible from other emissions, Plaintiff's purported disclaimer is ineffective.  *See* NOR ¶¶ 151–53; *Express Scripts*, 119 F.4th at 188–94.  *Express Scripts* is thus dispositive: removal was proper in *Express Scripts*, and it is proper here too.

Plaintiff's reliance on *Rhode Island v. Shell Oil Products Co.*, 979 F.3d 50 (1st Cir. 2020), is misplaced as removal there was rejected based on narrower claims distinct from those raised here and supported by a more limited factual record.  *First*, Defendants here provide additional grounds for removal that were not considered in *Rhode Island*, including, for example, the production and distribution of highly specialized fuels to the U.S. military.  *See* NOR ¶¶ 48–62.  *Second*, while Defendants here raise two of the three contracts raised in *Rhode Island*, (1) a contract for extraction from the Elk Hills Naval Petroleum Reserve and (2) leases for oil extraction in the Outer Continental Shelf ("OCS"), the Notice of Removal provides additional and detailed evidence not presented in *Rhode Island*.  *Third*, *Rhode Island* focused only on oil and gas "produced and sold . . . *in Rhode Island*," *id.* at 60 (emphasis added), whereas Plaintiff's claims here necessarily implicate Defendants' *global* production, extraction, distribution, and sales activities, including their activities carried out at the behest of federal officers.  *See, e.g.*, Compl. ¶¶ 15–22, 27.  *Finally*, *Rhode Island* suggested that the "distribution" of petroleum products at federal behest (as opposed to mere extraction) would have supported federal officer removal, *id.*—and, as explained in the

Notice of Removal, Defendants distributed a significant amount of petroleum to the federal government under the direction of federal officers. *See* NOR ¶¶ 24, 29–137.

In short, Defendants satisfy all three elements of the federal officer removal statute, and removal was proper under *Express Scripts*.

### 1. Defendants "Acted Under" Federal Officers And Agencies.

As the First Circuit recently confirmed, "'[t]he words "acting under" are broad,' and, like the rest of the statute, 'must be liberally construed.'" *Express Scripts*, 119 F.4th at 185 (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007)). "'Acting under' . . . contemplates a relationship where the private party engages in an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior," and "typically involves subjection, guidance, or control." *Id.* (cleaned up). "For example, a private contractor that 'help[s] the Government to produce an item it needs' and thus 'helps officers fulfill other basic governmental tasks' may remove because it assists with a governmental function that the government 'itself would have had to perform.'" *Id.* at 185–86 (quoting *Watson*, 551 U.S. at 153–54). "Courts have consistently held that the 'acting under' requirement is *easily satisfied*" in cases "involving injuries arising from a product manufactured for the government." *Moore*, 25 F.4th at 34 n.3 (emphasis added). Likewise, the First Circuit has recognized that the requirement is satisfied when a contractor has "operated [a facility] in accordance with government contracts, in conformance with military specifications, and under [military] oversight." *Id.* at 33 (cleaned up).

Here, Defendants have presented a robust evidentiary record—the overwhelming majority of which was *not before the court in Rhode Island*—that clearly and unequivocally establishes that Defendants acted under federal officers in connection with their fuel production and distribution activities. These examples, any one of which is sufficient to support federal officer removal, are comprehensively detailed in the Notice of Removal, *see* NOR ¶¶ 29–137, and include the following

(the first two of which were not presented in *Rhode Island*):

- The federal government's coercive control over the petroleum industry, including the production and distribution of petroleum products, during World War II and the Korean War, together with Defendants' construction and operation of wartime government-owned or -funded petroleum production facilities and oil distribution pipelines.  NOR ¶¶ 34–47, 83–87, 132–36.  Federal "directives and orders" "governed the production . . . and distribution within the industry of petroleum" and "petroleum products."  *Exxon Mobil Corp. v. United States*, 2020 WL 5573048, at *11 (S.D. Tex. Sept. 16, 2020).

- Defendants' production and distribution of large quantities of highly *specialized* fuels that are required to conform to exact Defense Department specifications to meet the unique operational needs of the U.S. military.  NOR ¶¶ 48–62.  As two former Chairmen of the Joint Chiefs of Staff explain, the contracts to produce these specialized fuels "were *not typical commercial agreements*"; rather, they required Defendants "to supply fuels with unique additives to achieve *important objectives*" "*under the oversight and direction* of military officials."  J. Dick Decl. in Support of Removal ("Dick Decl."), Ex. 15 (Dkt. No. 2-15) at 6, 20 (emphases added).

- A Chevron predecessor's operation of Elk Hills Naval Petroleum Reserve under the supervision of Naval officers.  NOR ¶¶ 63–82.  Although the First Circuit noted that "Standard could dispose of the oil they extracted as they saw fit," *Rhode Island*, 979 F.3d at 59, additional evidence presented here makes clear that Standard acted under the federal government's subjection and control, including as to the disposition of oil.  In particular, the "Operating Agreement," which was not presented in *Rhode Island*, specified that Standard Oil was "in the employ of the Navy Department and . . .

responsible to the Secretary thereof."  Dick Decl. Ex. 61 (Dkt. No. 5-2), at 3.

- Defendants' production of oil and gas under the federal government's close direction and supervision in the Outer Continental Shelf and on federal lands, to assist the government in fulfilling the basic (and critical) government objectives of ensuring sufficient domestic supplies of oil and gas to protect the nation's economic, security, and foreign policy interests.  NOR ¶¶ 88–125.  Although the First Circuit expressed skepticism because "there appear[ed] to be no close supervision" by the federal government, *Rhode Island*, 979 F.3d at 59, Defendants' substantial additional evidence presented here demonstrates this close supervision—most notably, the declaration from Professor Priest.  *See* Dick Decl. Ex. 70 (Dkt. No. 5-11).  The federal government "did not engage in perfunctory, run-of-the-mill permitting and inspection," but rather could "direct how oil and gas resources would be extracted and sold from the OCS."  *Id.* 70 ¶¶ 20, 22.

Plaintiff's attempts to recast many of these activities as simple regulatory compliance or "arm's-length transactions" are belied by the record.  Mot. at 9.  For instance, Defendants' evidence shows that Defendants' wartime activities were subject to detailed federal supervision and backed by government coercion, involving "subjection, guidance, or control."  *Express Scripts*, 119 F.4th at 185.  Without Defendants' production and supply of specialized military fuels, the government itself would have had to perform these vital tasks upon which the country's security depended.  *See Watson*, 551 U.S. at 153–54.  And as several circuits have found, when such products have "detailed federal specifications" and must be produced "in accordance with those specifications," the acting-under standard is satisfied.  *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 940–41, 944 (7th Cir. 2020); *see also Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 252 (4th

Cir. 2021) (similar). Collectively, the available evidence exceeds what First Circuit precedent requires. "Once [the Court] credit[s] these allegations and theory of the case . . . , the Commonwealth necessarily targets what [Defendants] allege[] are 'acts under' a federal officer's authority" in many substantial ways. *Express Scripts*, 119 F.4th at 190–91.

### 2. Defendants' Activities At The Direction Of Federal Officers Are "Related To" Plaintiff's Claims.

Next, Plaintiff's "suit" must be "'for or relating to'" Defendants' "'act[s] under color of [federal] office.'" *Moore*, 25 F.4th at 35 (quoting 28 U.S.C. § 1442(a)(1)). Courts have "consistently given this requirement a broad reading" to encompass acts "in association with or connection with" acts under federal office. *Express Scripts*, 119 F.4th at 186 (cleaned up). This standard "does not demand[] a showing of a specific government direction" for the defendants' alleged conduct. *Moore*, 25 F.4th at 36 (cleaned up); *see also Baker*, 962 F.3d at 944 (affirming that it is not necessary "that the complained-of conduct *itself* was at the behest of a federal agency"). Again, in performing this analysis, the Court "must 'credit'" Defendants' "'theory of the case.'" *Express Scripts*, 119 F.4th at 184 (quoting *Acker*, 527 U.S. at 432).

When Defendants' "theory of the case" is credited as required by *Express Scripts*, Defendants readily satisfy the relatedness prong. Plaintiff's suit seeks damages for harms allegedly caused by global greenhouse emissions, and Defendants have demonstrated that such claims thus necessarily depend on worldwide production, distribution, and sale of oil and gas products— including Defendants' production and distribution of oil and gas products under the direction, supervision, and control of federal officers as described above. As Plaintiff alleges, the combustion of these oil and gas products, including those produced and distributed under federal control, released greenhouse gases and caused harm. Thus, a direct connection or association exists between Defendants "acting under" federal officers by producing and distributing oil and gas pursuant to

federal control, and Plaintiff's attempt to seek damages from Defendants allegedly caused at least in part by that very same conduct. *See, e.g.*, NOR ¶¶ 3–4, 11–12, 21, 147–49; Compl. ¶¶ 15–27.

It is no answer for Plaintiff to respond that the Court should consider only Defendants' alleged deception. Mot. at 5–6. *First*, that is not Defendants' theory of removal, to which this Court must defer under *Express Scripts*. *Second*, Plaintiff's argument relies on precisely the sort of "artful pleading" the First Circuit has emphasized cannot be used to "circumvent[] federal officer jurisdiction." *Express Scripts*, 119 F.4th at 187 (cleaned up). Indeed, Plaintiff itself places Defendants' production and distribution of oil and gas *directly at issue as part of its alleged causal chain*: According to Plaintiff, Defendants' alleged misrepresentations increased demand for Defendants' products, which increased production, distribution, and consumption of those products, which increased emissions, which contributed to global climate change, ultimately causing Plaintiff's alleged injuries. *See, e.g.*, Compl. ¶¶ 15–22, 27. As the Second Circuit held in a similar climate change case: "It is precisely because fossil fuels emit greenhouse gases—which collectively 'exacerbate global warming'—that [Plaintiff] is seeking damages." *City of New York v. Chevron Corp.*, 993 F.3d 81, 91 (2d Cir. 2021). Because Plaintiff seeks damages for harms allegedly caused by emissions (which Plaintiff does not dispute), its claims relate directly to Defendants' government-directed activities that resulted in an increase in global emissions.

*Rhode Island* is distinguishable and does not preclude removal because the theory of liability there was that "oil companies produced and sold oil and gas products *in Rhode Island* that were damaging the environment." 979 F.3d at 60. Properly crediting Defendants' theory of the case— as *Express Scripts* mandates—demonstrates that Plaintiff's claims here rest on *global* production and distribution activities, necessarily implicating production and sales under federal direction. Moreover, Defendants here have presented numerous additional grounds for removal not

considered in *Rhode Island*, each of which relates to Plaintiff's claims—for example, Defendants provide evidence of their production and distribution of highly specialized fuels for the military and wartime activities conducted under the direction of the federal government that was not presented in *Rhode Island*. *See* NOR ¶¶ 34–62. And Plaintiff ignores that *Rhode Island* suggested that federal officer removal *would be proper* under the circumstances present here: Defendants' "distribution" of petroleum products "mandate[d]" by the U.S. government. 979 F.3d at 60. Here, unlike in *Rhode Island*, Defendants have presented considerable evidence of their distribution of petroleum products at the U.S. government's behest and under its control. *See* NOR ¶¶ 24, 29–137.

### 3. Any Attempt To Disclaim Injury Arising From The Sales Of Specialized Fuels To The United States Military Is Ineffective.

Far from validating Plaintiff's purported disclaimer of "damages . . . arising from the Defendants' supply of specialized, noncommercial fossil fuel products to the federal government," *see* Compl. ¶ 29, *Express Scripts* explains why the disclaimer is ineffective. In *Express Scripts*, the Commonwealth alleged that defendants "schemed to unlawfully inflate insulin prices through rebate negotiations and price setting" and purported to evade federal jurisdiction by disclaiming any "relief relating to any federal program." 119 F.4th at 179, 181. But as defendants showed, their challenged conduct—the negotiations over rebates and prices for insulin—"simultaneously" affected both insurance carriers serving government employees through a federal program and other carriers serving private parties. *Id.* at 183, 192. The conduct was thus "indivisible"; it was impossible "to divide" a defendant's negotiations between "federal and non-federal work to enforce the disclaimer." *Id.* at 192, 194. The First Circuit held that this "indivisibility" was "an important facet of [defendant's] theory of the case that must be credited in evaluating removal." *Id.* at 189. And, doing so, the court noted that "the disclaimer did not foreclose [the defendant's] arguments that it acted under a federal officer and possess[ed] colorable federal defenses." *Id.* at 194.

Federal jurisdiction exists here for the same reason. As discussed above, Defendants' theory of the case is that Plaintiff seeks damages for harms allegedly caused by global greenhouse gas emissions resulting from the global production and distribution of oil and gas, which create greenhouse gas emissions when combusted by end users, including the U.S. government and military. *See* NOR ¶¶ 3–4, 11–12, 21, 147–49. And, because greenhouse gases "become well mixed in the atmosphere" once emitted, and cannot be traced to any particular source, the emissions from government and military users are indistinguishable from and cumulative with all other emissions. *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 422 (2011); *see also City of New York*, 993 F.3d at 92 (same); NOR ¶¶ 151–52. Critically, Plaintiff does not dispute that it seeks damages allegedly caused by global emissions, that Defendants supplied substantial amounts of oil and gas products to the federal government, and that the emissions from those products cannot be segregated from emissions from products supplied to non-government entities. Crediting Defendants' theory of the case (which is only bolstered by Plaintiff's own concessions), U.S. government and military emissions sources are "indivisible" from the other emissions for which Plaintiff seeks to impose liability. Removal is thus proper.

Other case law reinforces that Plaintiff's disclaimer is ineffective. In *Baker v. Atlantic Richfield Co.*, for example, the Seventh Circuit held that the plaintiffs could not "have it both ways" by seeking damages for certain types of pollution, while at the same time disclaiming those types of pollution for purposes of jurisdiction—just as Plaintiff does here. 962 F.3d at 945 n.3. And in a subsequent case that *Express Scripts* cited, the Seventh Circuit affirmed remand *only* after the plaintiff "clearly and unequivocally conceded" that it would not seek relief even for *mixed* contamination—*i.e.*, contamination from a combination of governmental and private sources. *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 849 (7th Cir. 2024) ("If even a morsel of

contamination" comes from a government source, plaintiff's "recovery is barred"). Here, Plaintiff does not—and cannot—disclaim such relief, as doing so would eviscerate all of its claims.

#### 4. Defendants Raise "Colorable Federal Defenses."

Finally, Plaintiff devotes a single, cursory paragraph to contesting whether Defendants have a colorable federal defense. Mot. at 10. But as the First Circuit recently recognized, a colorable federal defense need not be "clearly sustainable" or "indisputable." *Express Scripts*, 119 F.4th at 186 (cleaned up). As long as Defendants make "at least a colorable showing," further argument as to the success of the defense "speaks to the merits of the defense but does not undermine [its] colorability." *Moore*, 25 F.4th at 37. Here, the Notice of Removal devotes six pages to describing several meritorious federal defenses Defendants intend to assert. NOR ¶¶ 154–66. This detail more than satisfies this prong's requirements. As to Plaintiff's cursory argument that the Complaint "does not allege any defect in military equipment," Mot. at 10, the Complaint expressly alleges that Defendants "fail[ed] to warn about *defects* in [their] fossil fuel products." Compl. ¶ 17 (emphasis added). And, as discussed, those products were supplied for substantial military use.

### B. Defendants Properly Removed This Case Under The Multiparty, Multiforum Trial Jurisdiction Act ("MMTJA").

Removal is also proper under Section 1441(e)(1)(B) where, as here, defendants are already party to an action that could have been brought under § 1369 and that action arises from the same "accident" as the action to be removed "even if the action to be removed could not have been brought in the district court as an original matter." 28 U.S.C. § 1441(e)(1)(B). In other words, even if this case could not have initially been brought in federal court under the MMTJA, removal is proper where a defendant is a party to a different action that (1) could have been brought under the MMTJA and (2) arises from the same "accident" as this case.

Here, Exxon Mobil Corporation, BP p.l.c., Chevron Corporation, ConocoPhillips, and Shell

plc are parties to two cases pending in this Court that could have been brought under the MMTJA and that arise from the same "accident" as this case: *Municipality of Bayamón et al. v. Exxon Mobil Corp. et al.*, 22-cv-01550-ADC (D.P.R.) ("*Bayamón*") and *Municipality of San Juan v. Exxon Mobil Corp. et al.*, 23-cv-01608-ADC (D.P.R.) ("*San Juan*").    Both cases involve minimal diversity between adverse parties.  *See Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973) (political subdivisions of a state are "citizen[s] of the State for diversity purposes").  Both cases involve two or more defendants residing in different States.  28 U.S.C. § 1369(a)(2).  And *all* of these cases arise from and seek damages related to the same "accident":  the tragic consequences of Hurricane María.  *See, e.g.*, *San Juan* Complaint ¶¶ 3, 201–20 (Dick Decl. Ex. 94) (Dkt No. 6-24).

Plaintiff argues that Hurricane María was not an "accident" under the MMTJA, because hurricanes are not "sudden," and because a "hurricane is not a single accident."  Mot. at 12–13 (emphasis omitted).  But these arguments fail to consider both the letter and the spirit of the law and undermine Plaintiff's own theory of the case.  As an initial matter, Plaintiff selectively quotes from the statute, in arguing that an accident must be "sudden."  Mot. at 12.  What the statute says is that "the term 'accident' means a sudden accident, *or a natural event culminating in an accident*."  28 U.S.C. § 1369(a) (emphasis added).  Nothing in the statute requires that the "natural event" must be sudden.  *Id.*  And Plaintiff does not dispute that Hurricane María was a natural event.  So whether a hurricane is "sudden" or not is irrelevant.

Plaintiff fails to cite any binding precedent for its argument that harm caused by a hurricane cannot be sufficient for MMTJA jurisdiction.  More important, Plaintiff's reliance on non-binding cases is misplaced, as plaintiffs there did not argue that defendants caused that hurricane.  *See Jambon v. State Farm Fire & Cas. Co.*, 2006 WL 2850176, at *3 (E.D. La. Oct. 4, 2006) ("Plaintiffs' cause of action did not arise out of Hurricane Katrina").  Instead, those cases largely

13

involved plaintiffs seeking recovery for a wide range of damages from insurers which were not implicated in causing the damage. *See Case v. ANPAC La. Ins. Co.*, 466 F. Supp. 2d 781, 796 (E.D. La. 2006) ("Consolidation of cases where there exist such distinct issues of liability and causation of damages . . . would not prevent duplicative litigation in State and federal court or otherwise foster judicial economy."). Here, all ***three*** cases seek damages from Hurricane María based on the same alleged facts and theory of liability—that Defendants purportedly caused a hurricane that resulted in catastrophic impacts in Puerto Rico. Indeed, Plaintiff itself has characterized Hurricane María as a "disaster" caused by Defendants. Compl. ¶ 16. Thus, Plaintiff cannot claim that this case does not involve overlapping issues of law and fact with the pending cases.

This is important because Congress enacted the MMTJA to "streamline the process by which multidistrict litigation governing disasters are adjudicated," given that "[t]he waste of judicial resources—and the costs to both plaintiffs and defendants—of litigating the same liability question several times over in separate lawsuit can be extreme." *Passa v. Derderian*, 308 F. Supp. 2d 43, 53 (D.R.I. 2004) (citations omitted); *see also Wallace v. La. Citizens Prop. Ins. Corp.*, 444 F.3d 697, 702 (5th Cir. 2006) ("[T]he MMTJA was designed to ameliorate the restrictions on the exercise of federal jurisdiction that ultimately forced parties in multiple suits arising from the same disaster to litigate in several fora."). Indeed, Congress encouraged the consolidation of such cases into the federal system by making it easier to remove a state case if a federal case involving the same accident was underway. *See* 28 U.S.C. §1441(e)(1)(B) (permitting removal to join an existing action that satisfies the requirements of §1369 "even if the action to be removed could not have been brought in the district court as an original matter"). That is precisely the situation here, where two cases seeking damages for the impacts of Hurricane María are already pending in federal court.

**C.    Defendants' Grounds For Removal Are Objectively Reasonable, And Plaintiff Is Not Entitled To Fees And Expenses.**

The Court should deny Plaintiff's request for fee-shifting under 28 U.S.C. § 1447(c). Fee-shifting is warranted only if the removing party lacked an objectively reasonable basis for seeking removal. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Here, Defendants' grounds for removal are not merely "objectively reasonable," but are in fact meritorious.

*First*, contrary to Plaintiff's arguments, removal of this action under federal-officer removal is not foreclosed by First Circuit precedent. *See supra* at 3–12. In fact, the First Circuit's recent decision in *Express Scripts* demonstrates why Plaintiff's purported disclaimer is ineffective and removal is proper. That other circuits have remanded other climate change cases, *see* Mot. at 15, does not foreclose removal or warrant an award of costs and fees.

*Second*, Defendants' removal under the MMTJA was objectively reasonable. The plain text of the statute demonstrates that it was intended to cover the widespread damage and tragic deaths caused by a single "natural event"—here, Hurricane María. In any event, whether a hurricane is covered by the MMTJA is a matter of first impression in this circuit, and Defendants should not be penalized for presenting an argument not yet considered by this Court or the First Circuit. Indeed, two other courts in similar cases rejected the plaintiffs' requests for fees because there was an objectively reasonable basis for removal. *See Cnty. of Multnomah v. Exxon Mobil Corp.*, 2024 WL 1991554, at *8 (D. Or. Apr. 10, 2024) (finding fee-shifting inappropriate when defendants raised issues "not present in previous cases originating in the Ninth Circuit"), *R&R adopted*, 2024 WL 2938473 (D. Or. June 10, 2024); *City of Charleston v. Brabham Oil Co., Inc.*, No. 2:20-CV-03579, Dkt. 157, slip op. at 13 (D.S.C. July 24, 2023) (declining request for fees because "many of the removal grounds were contested issues at the time of removal"). This Court should do the same.

## III.    CONCLUSION

The Court should deny Plaintiff's Motion to Remand. Defendants request oral argument.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 6th day of December 2024.

**CERTIFICATE OF SERVICE:** I, Roberto C. Quiñones-Rivera, certify that, on the above

date, I filed this document with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to all counsel of record registered in the system.

By: */s/ Roberto C. Quiñones-Rivera*
Roberto C. Quiñones-Rivera
USDC-PR Bar No. 211512
Eduardo A. Zayas-Marxuach
USDC-PR Bar No. 216112
Myrgia M. Palacios-Cabrera
USDC-PR Bar No. 230807
**MCCONNELL VALDÉS LLC**
P.O. Box 364225
San Juan, PR 00936-4225
Telephone:  787-250-2631
Facsimile:  787-474-9201
Email: rcq@mcvpr.com
Email: ezm@mcvpr.com
Email: mpc@mcvpr.com

**GIBSON, DUNN & CRUTCHER LLP**
Theodore J. Boutrous, Jr., *pro hac vice forthcoming*
tboutrous@gibsondunn.com
William E. Thomson, *pro hac vice forthcoming*
wthomason@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua D. Dick, *pro hac vice forthcoming*
jdick@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.374.8451

Thomas G. Hungar, *pro hac vice forthcoming*
thungar@gibsondunn.com
1050 Connecticut Ave., N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Chevron Corporation*

16

By: */s/ Néstor M. Méndez Gómez*
Néstor M. Méndez Gómez
USDC-PR Bar No. 118409
María D. Trelles Hernández
USDC-PR Bar No. 225106
**PIETRANTONI MENDEZ & ALVAREZ LLC**
Popular Center, 19th Floor
208 Ponce de León Ave.
San Juan, Puerto Rico 00918
Telephone: (787) 274-1212
Facsimile: (787) 274-1470
Email: nmendez@pmalaw.com
Email: mtrelles@pmalaw.com

Theodore V. Wells, Jr. (*pro hac vice pending*)
Daniel J. Toal (*pro hac vice pending*)
Yahonnes Cleary (*pro hac vice pending*)
Caitlin E. Grusauskas (*pro hac vice pending*)
**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: twells@paulweiss.com
Email: dtoal@paulweiss.com
Email: ycleary@paulweiss.com
Email: cgrusauskas@paulweiss.com

*Attorneys for Defendant Exxon Mobil Corporation*


By: */s/ Carlos A. Valldejuly*
Carlos A. Valldejuly

Carlos A. Valldejuly (USDC No. 209505)
José J. Colón García (USDC No. 308010)
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Avenue, Suite 800
San Juan, Puerto Rico 00918-1813
(787) 764-8181
carlos.valldejuly@oneillborges.com
jose.colon@oneillborges.com

David C. Frederick (*pro hac vice forthcoming*)
James M. Webster, III (*pro hac vice forthcoming*)
Daniel S. Severson (*pro hac vice forthcoming*)
Grace W. Knofczynski (*pro hac vice forthcoming*)
**KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

17

dfrederick@kellogghansen.com
jwebster@kellogghansen.com
dseverson@kellogghansen.com
gknofczynski@kellogghansen.com

*Attorneys for Defendants Shell plc and Station Managers of Puerto Rico, Inc.*

**SEPULVADO, MALDONADO & COURET**
304 Ponce de Leon Ave, Suite 990
San Juan, PR 00918
Tel: (787) 765-5656
Fax: (787) 294-0073

By: */s/ Lee R. Sepulvado-Ramos*
Lee R. Sepulvado-Ramos

Lee R. Sepulvado-Ramos
RUA Núm. 11111
lsepulvado@smclawpr.com

**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, TX 77002
Tel: (713) 836-3600
Fax: (713) 836-3601
Anna G. Rotman (*pro hac vice* forthcoming)
anna.rotman@kirkland.com
Kenneth A. Young (*pro hac vice* forthcoming)
kenneth.young@kirkland.com
Allyson C. Arias (*pro hac vice* forthcoming)
ally.arias@kirkland.com

*Attorneys for Defendants TotalEnergies SE and TotalEnergies Marketing PR Corp.*

By: */s/ Ricardo F. Casellas*
Ricardo F. Casellas
USDC-PR No. 203114
Heriberto J. Burgos-Pérez
USDC-PR No. 204809
**CASELLAS ALCOVER & BURGOS, P.S.C.**
2 Tabonuco, Suite 400
San Patricio, PR 00968
Telephone: (787) 756-1400
Facsimile: (787) 756-1401
Email: hburgos@cabprlaw.com
Email: rcasellas@cabprlaw.com

Matthew T. Martens (*pro hac vice forthcoming*)
Ericka Aiken (pro hac vice forthcoming)
**WILMER CUTLER PICKERING HALE**

**AND DORR LLP**
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Email: matthew.martens@wilmerhale.com
Email: ericka.aiken@wilmerhale.com

Hallie B. Levin (*pro hac vice forthcoming*)
**WILMER CUTLER PICKERING HALE**
**AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
Email: hallie.levin@wilmerhale.com

*Attorneys for Defendant ConocoPhillips*


By: */s/ Oreste R. Ramos*
Oreste R. Ramos (USDC-PR No. 216801)
Arturo L.B. Hernández González (USDC-PR No. 304601)
**PIETRANTONI MÉNDEZ & ALVAREZ LLC**
Popular Center, 19th Floor
208 Ponce de León Avenue
San Juan, Puerto Rico 00918
Tel: (787) 274-1212
Fax: (787) 274-1470
oramos@pmalaw.com
ahernandez@pmalaw.com

Tristan L. Duncan (pro hac vice)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Tel: 816-474-6550
Fax: 816-421-5547
Email: tlduncan@shb.com

Daniel B. Rogers (pro hac vice)
**SHOOK, HARDY & BACON L.L.P.**
Citigroup Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Tel: 305-358-5171
Fax: 305-358-7470
Email: drogers@shb.com

*Attorneys for Chevron Phillips Chemical*
*Puerto Rico Core LLC*

19

By: */s/ Eric Pérez-Ochoa*
Eric Pérez-Ochoa
USDC-PR Bar No. 206314
Luis A. Oliver Fraticelli
USDC-PR Bar No. 209204
**ADSUAR MUNIZ GOYCO**
**SEDA & PÉREZ-OCHOA, P.S.C.**
PO Box 70294
San Juan, Puerto Rico 00936-8294
Telephone: 787.756.9000
Facsimile: 787.756.9010
Email: epo@amgprlaw.com
Email: loliver@amgprlaw.com

Sean O. Morris (*pro hac vice*)
John D. Lombardo (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199
Email: sean.morris@arnoldporter.com
Email: john.lombardo@arnoldporter.com

Diana E. Reiter (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689
Email: nancy.milburn@arnoldporter.com
Email: diana.reiter@arnoldporter.com

Jonathan W. Hughes (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3156
Facsimile: (415) 471-3400
Email: jonathan.hughes@arnoldporter.com

*Attorneys for Defendant BP p.l.c.*