UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| COMMONWEALTH OF PUERTO RICO, through its Attorney General,<br><br>Plaintiff,<br><br>v.<br><br>EXXON MOBIL CORPORATION; BP P.L.C.; CHEVRON CORPORATION; CHEVRON PHILLIPS CHEMICAL PUERTO RICO CORE, LLC; CONOCOPHILLIPS; SHELL PLC; STATION MANAGERS OF PUERTO RICO, INC.; TOTALENERGIES; and TOTALENERGIES MARKETING PR CORP.,<br><br>Defendants. | Civil Action No. 3:24-cv-01393<br><br>**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND TO THE COURT OF FIRST INSTANCE, SAN JUAN SUPERIOR PART**<br><br>Hon. Aida M. Delgado-Colon<br><br>Action Filed: July 15, 2024 |

**THE COMMONWEALTH OF PUERTO RICO'S REPLY IN SUPPORT
OF ITS MOTION TO REMAND**

**TO THE HONORABLE COURT:**

**NOW COMES** the Commonwealth of Puerto Rico, respectfully requesting the Court to remand this case and award fees and costs because the more than 2,500 pages in Defendants' Notice of Removal ("NOR"), exhibits, and Opposition confirm this case was not removable under the federal officer removal statute, or the Multiparty, Multiforum Jurisdiction Act ("MMTJA"), and Defendants had no reasonable basis to believe it was. Removal wasted judicial resources, increased litigation costs, and baselessly delayed proceedings in the Court of First Instance.

**MEMORANDUM OF LAW**

**I.  Unanimous Precedent Forecloses Federal-Officer Removal.**

1.      Every court to decide the issue has concluded there is no federal-officer jurisdiction over climate-deception cases like the Commonwealth's, including the First Circuit in a binding

1

decision that compels remand here. *See Rhode Island v. Shell Oil Prods. Co.* ("*Rhode Island I*"), 979 F.3d 50, 60 (1st Cir. 2020); Mot. 2 n.1.[1] These precedents, which Defendants largely ignore, establish that Defendants cannot satisfy any of the three elements of the federal-officer jurisdiction statute, 28 U.S.C. § 1442(a)(1). The Court should follow this uniform authority and reject Defendants' frivolous federal-officer removal argument. Like every previous attempt, this time "is not the charm." *Anne Arundel Cnty. v. BP P.L.C.*, 94 F.4th 343, 346 (4th Cir. 2024).

### A. The Commonwealth's Suit Shares No Nexus With Defendants' Purported Federal Activities.

2.  Federal-officer removal is barred because, under binding and persuasive authority, Defendants cannot show the Commonwealth brought this case "for or relating to" any conduct Defendants allegedly took at federal direction. 28 U.S.C. § 1442(a)(1).

#### 1. The Commonwealth's Disclaimer Is Effective and Prevents Removal.

3.  The Complaint disclaims "any recovery" for injuries "arising from the Defendants' supply of specialized, noncommercial fossil fuel products to the federal government for military and national defense purposes." Compl. ¶ 29. Because Defendants' wartime conduct, NOR ¶¶ 34–47, and their provision of specialized fuels to the military, *id.* ¶¶ 48–62, are explicitly excluded from the Commonwealth's suit, the Commonwealth plainly has not sued Defendants "for or relating to" those activities. 28 U.S.C. § 1442(a)(1). The First Circuit recently instructed that an "express disclaimer" like this one will "defeat removal" because it "explicitly renounce[s] claims upon which federal officer removal [is] based" and thus ensures that "any alleged injury could not have happened under the direction of a federal officer." *Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024) (quotations omitted). Courts have remanded suits analogous to the

---

[1] Page references to the Motion and Opposition are to the blue ECF page number at the top of each page.

Commonwealth's based on identical disclaimers. *E.g.*, *Hoboken v. Chevron Corp.*, 45 F.4th 699, 713 (3d Cir. 2022).

4. Defendants argue that "*Express Scripts* explains why the disclaimer is ineffective." Opp. 14. The disclaimer in *Express Scripts* was nothing like the one at issue here, however, and *Express Scripts* in fact explains why express disclaimers like the Commonwealth's *are* effective. The disclaimer in *Express Scripts* was deemed ineffective because it did not actually preclude liability for federally directed conduct. Whereas the complaint "claimed not to seek relief related to the [defendant's] federal service," it also explicitly sought "damages based on [the defendant's] rebate negotiations," which the NOR alleged were conducted "for [federal] and non-[federal] plans simultaneously." *Express Scripts*, 117 F.4th at 179, 192. If the defendant was "liable for its conduct in negotiating rebates for private clients and [federal] plans, then it could be liable for its conduct under [federal] direction—no matter what the disclaimer says." *Id.* at 191.

5. The Commonwealth's disclaimer does not suffer from the same flaw. It "clearly carve[s] out certain factual bases" for relief— *i.e.*, discrete fuel sales to the federal government for military and national defense purposes—and leaves no possibility that the Commonwealth will "recover for work that [Defendants] claim[] to have carried out for the federal government." *Id.* at 187, 192 (quotations omitted). And, as already noted, *Express Scripts* squarely holds that such "express disclaimers" are "valid" and "will prevent removal." *Id.* at 187.[2] Like in other climate-deception cases, the Commonwealth's disclaimer is "no ruse," and instead "carve[s] out a small

---

[2] The disclaimer at issue in *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 945 n.3 (7th Cir. 2020), is similarly distinguishable from the Commonwealth's. The *Baker* plaintiffs' disclaimer was ineffective because it contradicted their theory of liability; the plaintiffs sought to recover for lead and arsenic contamination of their homes, while asserting at the same time that their claims did not "pertain to" earlier government-controlled conduct at the same site that indisputably led to releases of lead and arsenic. *Id.* at 941. Just as in *Express Scripts*, the *Baker* disclaimer thus did not exclude the possibility that the plaintiffs could recover for federally directed conduct. *Raoul v. 3M Co.*, 111 F.4th 846, 849 (7th Cir. 2024), is also irrelevant because its holding is limited to crediting a broad disclaimer made for the first time at oral argument on appeal. The *Raoul* dictum Defendants cite makes no difference because *Express Scripts* requires this Court to credit express disclaimers like the Commonwealth's and explains why they are effective.

island that would needlessly complicate [its] case[]." *Hoboken*, 45 F.4th at 713 (crediting identical disclaimer and rejecting argument that analogous suits "cannot separate harm caused by military fuel use from harm caused by civilian fuel use").

### 2. Under Binding Precedent, Defendants' Deceptive Marketing Does Not Relate to Any of Their Allegedly Federal Activities.

6. Even absent the disclaimer, Defendants still cannot satisfy the nexus element. Federal-officer removal is inappropriate unless Defendants can show their "charged conduct was carried out 'for or relating to' the asserted official authority." *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 34 (1st Cir. 2022). Controlling First Circuit precedent mandates remand here because "there is simply no nexus" between Defendants' charged conduct—their failure to warn and deceptive marketing of fossil fuels, *see* Compl. ¶ 27—and "anything [Defendants] allegedly did at the behest of a federal officer." *Rhode Island I*, 979 F.3d at 60; *see* Mot. 5–6.[3]

7. Defendants argue the Court should not "consider only Defendants' alleged deception," but rather should exercise jurisdiction because the Commonwealth's claims relate to their "production and distribution of oil and gas." Opp. 13. They complain that requiring their allegedly federal activities to relate to their deception instead of to their broader fossil fuel activities relies on "artful pleading." *Id*. But under clearly established authority, federal-officer removal is only warranted if Defendants' "*charged conduct*" relates to "the asserted official authority," *Moore*, 25 F.4th at 34 (emphasis added),[4] and Defendants' charged conduct here is their deceptive marketing of fossil fuels, Compl. ¶ 27. Defendants do not allege federal officers

---

[3] *See also, e.g.*, *Anne Arundel*, 94 F.4th at 349; *Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122, 145 (2d Cir. 2023); *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 156 (D.C. Cir. 2023).

[4] *See also Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (requiring "a nexus . . . between the *charged conduct* and asserted official authority" (emphasis added)); *Anne Arundel*, 94 F.4th at 348 (rejecting the same "novel and atextual attempt to expand the scope of the relevant inquiry" because "[i]t is the 'act' for which the defendant is being sued—not the plaintiff's entire civil action in a general sense—that must relate to the asserted federal duty").

influenced their marketing activities at all, and the Commonwealth's claims simply do not relate to anything Defendants allegedly did under federal direction.

8. Defendants next misconstrue controlling law by insisting the Court must ignore the charged conduct alleged in the Complaint and instead "defer" to Defendants' self-serving "theory of removal." Opp. 13. But no rule authorizes Defendants to "freely rewrite the complaint and manufacture a cause of action explicitly disclaimed by Plaintiff and then ask the Court to accept their 'theory of the case' for purposes of removal." *Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618, 636 n.21 (D. Del. 2022) (rejecting the same argument). Courts credit a removing defendant's "well-pleaded allegations" only "[t]o the extent the parties raise factual disputes about the scope of a defendant's federal obligations," to ensure "'the protection of a federal forum' in which to resolve those disputes." *Express Scripts*, 119 F.4th at 189; *see id.* ("[W]e credit Caremark's theory of the case—that its work for private clients was indivisible from its work for the federal government due to the structure of its rebate negotiations . . . ."). This rule does not apply here because the Commonwealth does not challenge the NOR's factual allegations, but rather explains why those allegations fail to establish jurisdiction as a matter of law even if accepted in full.

9. Defendants' attempts to evade binding First Circuit caselaw also fail. They argue *Rhode Island I* is distinguishable because the state supposedly only alleged harms caused by oil and gas products sold in Rhode Island. Opp. 13. That is false. Rhode Island's complaint, like the Commonwealth's, alleged that Defendants' deception inflated demand for their fossil fuel products inside *and* outside the forum, exacerbating climate change and injuring the state.[5] *See* Decl. of Katie Jones, Ex. A at 60 ¶ 19 ("Accounting for their wrongful promotion and marketing activities,

---

[5] The First Circuit's subsequent summary of the suit confirms as much. *See Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44, 49–50 (1st Cir. 2022) ("Rhode Island claims that the Energy Companies named in our caption knew for *decades* that burning fossil fuels is damaging the earth's atmosphere but duped *the public* into buying more and more of their products (consequences be damned) — all to line their very deep pockets." (second emphasis added)).

5

Defendants bear a dominant responsibility for *global warming generally*, and for Plaintiff's injuries in particular." (emphasis added)). Even if Defendants were correct, that distinction would be irrelevant because the First Circuit's reasoning did not turn on the geographic scope of Rhode Island's suit, but rather on the fact that the suit—like the Commonwealth's—challenged deceptive marketing and not extraction or production of fossil fuels. *Rhode Island I*, 979 F.3d at 59–60; Mot. 5. *Rhode Island I* is on-point and requires remand here.[6]

### B. Defendants Did Not Act Under Federal Officers.

10.     Federal-officer removal is also barred because Defendants did not "act[] under a federal officer's authority." *Moore*, 25 F.4th at 34. Federal appeals courts across the country have evaluated the same record Defendants provide here, and every court to rule on the issue has held that Defendants did not act under a federal superior. *See* Mot. 7–10. Remarkably, Defendants fail to mention—let alone contend with—this uniform body of precedent. Instead, they baldly assert that the record "clearly and unequivocally establishes that [they] acted under federal officers." Opp. 9. That conclusion is belied by the heap of on-point contrary authority Defendants ignore.

11.     "Government contractors may only remove when their relationship with the government 'is an unusually close one involving detailed regulation, monitoring, or supervision.'" *Express Scripts*, 119 F.4th at 193 (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007)). The courts that have evaluated Defendants' evidence have concluded that each proffered activity constitutes either simple "compliance . . . with federal laws, rules, and regulations," *Watson*, 551 U.S. at 153, sales to "the government [of] an off-the-shelf commercial product,"

---

[6] Defendants also argue *Rhode Island I* "suggested that federal officer removal would be proper" based on their alleged distribution of fossil fuels to the military. Opp. 14. But that issue was not before the court in *Rhode Island I*, and, regardless, Defendants' sales of fossil fuels to the military are "explicitly not a part of [the Commonwealth's] case," *Rhode Island I*, 979 F.3d at 60. Moreover, several other courts have held that such military fuel sales do not relate to the deceptive marketing alleged in analogous climate deception suits. *E.g.*, *Anne Arundel*, 94 F.4th at 349; Mot. 6 n.4.

6

*Express Scripts*, 119 F.4th at 193, or "a typical, arms-length business deal" with the government, *id.*, none of which constitute acting under a federal officer. *See* Mot. 7–10.

12. For example, Defendants again insist their wartime activities "were subject to detailed federal supervision." Opp. 11. But they ignore the appellate caselaw holding that *the same evidence* they provide here shows only Defendants' compliance with the law or arms-length business agreements with the government. *See Honolulu v. Sunoco LP*, 39 F.4th 1101, 1107–08 (9th Cir. 2022) ("Defendants did not act under federal officers when they produced oil and gas during the Korean War" because "Defendants' compliance with the DPA was only lawful obedience"); *Oakland v. BP PLC*, 2023 WL 8179286, *2 (9th Cir. Nov. 27, 2023) (unpublished) ("As to the World War II claims, the evidence supplied by the [defendants] merely confirms their compliance with the law while executing arms-length business agreements to supply fuel and build fuel infrastructure."); Mot. 8–9. The same is true for Defendants' other bases for removal: Defendants concede that unanimous authority has squarely rejected the same jurisdictional grounds on the same record they offer here. *See* Mot. 7–10; Opp. 10–11. This Court should not break from this uniform body of authority, and Defendants provide no reason to do so.[7]

**C. Defendants Have No Colorable Federal Defenses.**

13. The Court need not reach the statute's third element because Defendants cannot satisfy the first two. If the Court does reach the question, Defendants fail to satisfy this element too. Their asserted defenses either "fail to stem from official duties," such as their preemption and First Amendment defenses, or "are not colorable" because they have nothing to do with the

---

[7] Defendants' citation to *Baker* is unavailing. Whereas in *Baker* "the government directed nearly every aspect of [the defendant's] production process," 962 F.3d at 940, here Defendants at most entered arms-length contracts with or made commercial sales to federal government that did not involve close supervision. *See* Mot. 7–10. Likewise, *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 252–53 (4th Cir. 2021), is off-base because the defendants there acted as the "statutorily authorized *alter ego* of the federal government" and "were subject to extensive oversight by the federal government," which is not the case for Defendants here. *See* Mot. 7–10.

Complaint, like their federal contractor defense. *See Honolulu*, 39 F.4th at 1110; Mot. 10.

## II. Defendants' Removal Under the MMTJA Lacks Any Factual or Legal Basis.

14.     Defendants have not posited any facts or law substantiating the existence of an "accident" within the meaning of the MMTJA, and thus cannot meet their burden under the statute. *Racca v. La. Farm Bureau Mut. Ins. Co*., 2006 WL 3905004, at *3 (E.D. La. Dec. 8, 2006). Absent an MMTJA "accident," the federal RICO cases could not have been brought under 28 U.S.C. § 1369(a) and the Commonwealth's action cannot be removed under 28 U.S.C. § 1441(e)(1)(B).

15.     The Opposition, like the NOR, fails to substantiate any facts showing an "accident" under the MMTJA. NOR ¶¶ 168–172; Opp. 16–18. An MMTJA "accident" must be "sudden"; must occur at "a discrete location" where "at least 75 natural persons have died"; and must be the "same," "single" accident from which this case and the federal RICO cases all "arise[]." 28 U.S.C. §§ 1369(a), 1369(c)(4), 1441(e)(1)(B); *see, e.g.*, *Racca*, 2006 WL 3905004, at *1–3; *Nguyen v. ANPAC La. Ins. Co.*, 2006 WL 3714500, *2 n.1, *3 (E.D. La. Dec. 11, 2006).

16.     Defendants allege no facts to show this case or the federal RICO cases arose from an MMTJA "accident." They instead gesture toward Hurricane María and unspecified "consequences" flowing from it. Opp. 17. But hurricanes are outside the class of "accidents" Congress contemplated. *See* 147 CONG. REC. H893-01 (2001); *Racca*, 2006 WL 3905004 at *2. The MMTJA's text makes clear that a natural event itself is not an "accident." 28 U.S.C. § 1369(c)(4). A "natural event" must instead "culminat[e] in an accident," meaning it must *cause a separate event* that meets the definition of "accident." *Id.*; *Nguyen*, 2006 WL 3714500 at *2; *Racca*, 2006 WL 3905004 at *2; *Wood v. State Farm Fire & Cas. Co.*, 2006 WL 8557083, *3 (E.D. La. Oct. 24, 2006). That category would include, for example, a levee failure caused by an intense storm. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 463 F. Supp. 2d 583, 591

(E.D. La. 2006). Defendants posit no such specific event. NOR ¶¶ 168–172; Opp. 16–18.

17. MMTJA removal also fails on the law. Defendants ignore the manifold cases cited in the Motion holding that the generalized effects of a hurricane are an improper basis for MMTJA removal. *See, e.g.*, *Holzenthal v. Essex Ins. Co.*, 2007 WL 9789634, *4 (E.D. La. Feb. 6, 2007) (courts have "consistently declined to extend jurisdiction under 28 U.S.C. §§ 1369 and 1441(e)(1) to cases arising out of" a hurricane); *Salvaggio v. Safeco Prop. & Cas. Ins. Cos.*, 458 F. Supp. 2d 283, 289 (E.D. La. 2006) (a hurricane is not a "single accident"); *Nguyen*, 2006 WL 3714500 at *2–3 (a hurricane is not "sudden"); *Racca*, 2006 WL 3905004 at *3 (a hurricane is not the "same" accident); *Preston*, 463 F. Supp. 2d at 591 (a hurricane does not occur at a "discrete location"); *see also* Mot. 11 n.6 (citing numerous cases). Unanimous caselaw calls for remand.

18. Defendants cite no case supporting MMTJA removal based on a hurricane. Opp. 16–18. They instead claim, falsely, that an MMTJA "accident" need not be "sudden" and that it is thus "irrelevant" whether a hurricane is "sudden." *Id.* at 17. But the MMTJA itself states otherwise, 28 U.S.C. § 1369(a)(4), as does the case Defendants previously relied on in their NOR. *Nguyen*, 2006 WL 3714500 at *2–3; NOR ¶ 170 n.134. Tellingly, Defendants' Opposition ignores *Nguyen*.

19. Defendants' ongoing mischaracterization of this suit as arising from a hurricane, rather than arising from the deceptive conduct alleged in the Complaint, *see* Mot. 14–15 (citing Compl. ¶¶ 5, 15, 17, 20–23, 27–28), obfuscates the MMTJA's "arises from" requirement, 28 U.S.C. §§ 1441(e)(1)(B), 1369(a), and warrants remand. *Thompson v. Mixon*, 2007 WL 1550948, *1, *3 (E.D. La. May 25, 2007). And Defendants' new causation argument, Opp. 17–18, is a red herring. The MMTJA does not require any causation analysis. 28 U.S.C. §§ 1441(e)(1)(B), 1369(a). Defendants waste the Court's time by raising that issue. Finally, Defendants' consolidation arguments are self-serving. Opp. 18. Defendants contradict themselves

by purporting to seek full consolidation of the federal RICO cases here while opposing consolidation in those dockets.[8] Defendants' gamesmanship should be rejected.

### III. The Court Should Award Attorneys' Fees and Costs.

20. An award of fees and costs is warranted under 28 U.S.C. § 1447(c) because Defendants "lacked an objectively reasonable basis" to believe removal was proper. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Federal-officer removal is foreclosed by First Circuit precedent and has been rejected in analogous cases by every court to consider it, including seven federal courts of appeals. *See* Mot. 2 n.1. That Defendants expect this Court to wade through almost 2,500 pages of exhibits while barely bothering to address the unanimous caselaw rejecting that very evidence testifies to the frivolousness of removal. MMTJA removal was also objectively unreasonable because (1) Defendants neglect to minimally allege the facts necessary to invoke the statute; (2) Defendants' theory is plainly inconsistent with the statutory text; and (3) Defendants' theory as alleged in the NOR relied primarily on a misconstrued case, which they have since abandoned, that in fact undermines their position. Even if the First Circuit has not been presented with this argument yet, the utter lack of legal and factual support for Defendants' position shows it is "objectively absurd" and warrants an award of fees and costs. *New York v. Exxon Mobil Corp.*, 733 F. Supp. 3d 296, 316 (S.D.N.Y. 2024) (granting remand and awarding fees).

**WHEREFORE**, the Commonwealth respectfully requests the Court to remand this action and award fees and costs incurred in litigating Defendants' unreasonable removal.

---

[8] Defendants' reliance on *Wallace v. La. Citizens Prop. Ins. Corp.*, 444 F.3d 697, 702 (5th Cir. 2006), and *Passa v. Derderian*, 308 F. Supp. 2d 43 (D.R.I. 2004), is also misplaced. The issue in *Wallace* was whether the District Court improperly abstained under 28 U.S.C. § 1369(b). 444 F.3d at 701. That provision is not at issue here, making *Wallace* inconsequential. And subsequent courts have consistently said *Wallace* does *not* counsel MMTJA removal when a case arises from a hurricane. *See, e.g.*, *Salvaggio*, 458 F. Supp. 2d at 289. The issue in *Passa* was also whether § 1369(b) abstention was appropriate. 308 F. Supp. 2d at 51–65. As noted, that issue is not in play here. Moreover, in *Passa* the relevant federal cases were properly brought under § 1369(a) because they arose from a quintessential MMTJA "accident": a sudden fire that engulfed a nightclub and killed hundreds of people. *Id.* at 46, 50, 63. *Passa* is thus an example of a viable MMTJA "accident." *Passa* does not support a hurricane being an MMTJA "accident."

**RESPECTFULLY SUBMITTED**

**I CERTIFY**: That on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will notify case participants appearing in said system.

In San Juan, Puerto Rico, this 10th day of January, 2025.

By: S/ José A. Andréu Fuentes
José A. Andréu Fuentes
**BUFETE ANDRÉU & SAGARDÍA**
261 Ave. Domenech
San Juan, P.R. 00918-3518
Tel: (787) 754-1777
Email: jaf@andreu-sagardia.com

**SHER EDLING LLP**
Victor M. Sher (*pro hac vice*)
Matthew K. Edling (*pro hac vice*)
Katie Jones (*pro hac vice*)
Chase S. Whiting (*pro hac vice*)
Anthony M. Tohmé (*pro hac vice*)
100 Montgomery St., Ste. 1410
San Francisco, CA 94104
Tel: 628-231-2500
Fax 628-231-2929
Email: vic@sheredling.com
       matt@sheredling.com
       katie@sheredling.com
       cwhiting@sheredling.com
       anthony@sheredling.com

*Attorneys for the Commonwealth of Puerto Rico*