**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| COMMONWEALTH OF PUERTO RICO, through its Attorney General,<br><br>Plaintiff,<br><br>v.<br><br>EXXON MOBIL CORPORATION; BP P.L.C.; CHEVRON CORPORATION; CHEVRON PHILLIPS CHEMICAL PUERTO RICO CORE, LLC; CONOCOPHILLIPS; SHELL PLC; STATION MANAGERS OF PUERTO RICO, INC.; TOTALENERGIES; and TOTALENERGIES MARKETING PR CORP.,<br><br>Defendants. | Civil Action No. 3:24-cv-01393<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' SECOND NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Hon. Aida M. Delgado-Colon<br><br>Action Filed: July 15, 2024 |

**THE COMMONWEALTH OF PUERTO RICO'S RESPONSE TO DEFENDANTS'**
**SECOND NOTICE OF SUPPLEMENTAL AUTHORITY**

**TO THE HONORABLE COURT:**

**NOW COMES** the Commonwealth of Puerto Rico (the "Commonwealth"), respectfully

responding to Defendants' second notice of supplemental authority (ECF No. 104, "Notice")

regarding the Commonwealth's motion to remand this action to the Court of First Instance for lack

of federal subject-matter jurisdiction (ECF No. 65, "Motion").

Every federal court to consider removal of state-law claims brought by a sovereign entity

challenging fossil-fuel companies' deception about climate change has granted remand, *see* Mot.

at 2 & n.1, including another federal court earlier this week, *Makah Indian Tribe & Shoalwater*

*Bay Indian Tribe v. Exxon Mobil Corp.*, 2:24-cv-157 & 2:24-cv-158, 2025 WL 913767, *1 (W.D.

Wash. March 26, 2025) (consolidated order) ("[F]ederal jurisdiction is absent here" and "hold[ing]

otherwise would elevate form over substance and improperly federalize state-law claims").

Defendants ask this Court to become an outlier among all other federal courts to consider removal in this context. Their latest supplemental authority—a split decision from the Fourth Circuit in a case involving chemicals not at issue in the Commonwealth's suit—cannot overcome the unanimous weight of binding and persuasive authority that mandates remand of this lawsuit.

*Maryland v. 3M Co.*, 130 F.4th 380 (4th Cir. 2025) ("*Maryland*")[1] does not change the fact that binding First Circuit precedent forecloses federal-officer removal here. *See Rhode Island v. Shell Oil Prods. Co.* ("*Rhode Island I*"), 979 F.3d 50, 59–60 (1st Cir. 2020) (holding that "there is no subject-matter jurisdiction under the federal-officer removal statute" over analogous climate-deception case); *Rhode Island v. Shell Oil Prods. Co.* ("*Rhode Island II*"), 35 F.4th 44, 53 n.6 (1st Cir. 2022) ("[W]e 'adhere to' [*Rhode Island I*'s] rejection of federal-officer removal jurisdiction."). Nor does it break the uniform precedent—including two decisions from the Fourth Circuit itself—holding that there is no federal-officer jurisdiction over climate-deception cases much more similar to the Commonwealth's suit than *Maryland* is. *See* Mot. at 2 & n.1 (listing 17 decisions—including 11 appellate decisions—rejecting federal-officer removal); *Baltimore v. BP P.L.C.*, 31 F.4th 178, 228–38 (4th Cir. 2022) (rejecting "Defendants' ability to remove under the federal officer removal statute"); *Anne Arundel Cnty. v. BP P.L.C.*, 94 F.4th 343, 347–51 (4th Cir. 2024) ("We conclude federal officer removal was no more proper here than in *Baltimore*.").

Both arguments Defendants extrapolate from the *Maryland* decision are contrary to First Circuit law, moreover, and the decision provides no persuasive guidance. First, Defendants argue that, based on *Maryland*'s reasoning, the Commonwealth's disclaimer of injuries arising from Defendants' sale of fossil fuels to the federal government for national defense purposes cannot

---

[1] The appellees in *Maryland* have filed a petition for rehearing en banc, and the Fourth Circuit has stayed the panel's decision while it considers the petition.

defeat removal. *See* Not. at 3. But the First Circuit has squarely held that disclaimers that "clearly carve out certain factual bases" for liability "such that any alleged injury could not have happened under the direction of a federal officer will prevent removal." *Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024) (cleaned up). That is exactly what the Commonwealth's disclaimer does: It carves out discrete fuel sales to the federal government for national defense purposes and thus leaves no possibility that the Commonwealth will "recover for work that [Defendants] claim[] to have carried out for the federal government." *Id.* at 192 (quotations omitted). Federal courts have remanded analogous climate-deception cases to state court based on identical disclaimers. *E.g.*, *Hoboken v. Chevron Corp.*, 45 F.4th 699, 713 (3d Cir. 2022). The Commonwealth's disclaimer defeats Defendants' federal-officer removal theory under First Circuit law, and the Fourth Circuit's decision in *Maryland* does not render it ineffective. And even if the Commonwealth's disclaimer were ineffective, remand would still be required because Defendants cannot satisfy the nexus element of the federal-officer removal statute as a matter of law, *see Rhode Island I*, 979 F.3d at 59–60; Mot. at 5–6; Reply at 4–6, nor can they establish the other two disputed elements necessary under the statute, *see* Mot. at 6–10; Reply at 6–8.

Second, reprising a familiar theme, Defendants again insist that federal-officer removal is proper because "a substantial portion of the emissions forming the basis for Plaintiff's claims were the result of oil and gas production and distribution carried out under federal control." Not. at 4. As an initial matter, Defendant's argument would fail in the Fourth Circuit notwithstanding the *Maryland* decision, because that court has already *twice* rejected it when advanced by many of the same Defendants here. *See Anne Arundel*, 94 F.4th at 348 ("We begin by rejecting the companies' novel and atextual attempt to expand the scope of the relevant inquiry" to include "their 'extraction and production of fossil fuels, a substantial amount of which occurred under the direction of federal

officers.'"); *Baltimore*, 31 F.4th at 234 ("[T]he relationship between Baltimore's claims and any federal authority over a portion of certain Defendants' production and sale of fossil-fuel products is too tenuous to support removal under § 1442."). Regardless, the argument is meritless on its own terms because Defendants cannot show they were "acting under" federal subjection or control in conducting their proffered activities. *See* Mot. at 6–10; Reply at 6–7. Even if they could, Defendants' production and distribution of fossil fuels would still be insufficient to invoke the statute because those activities do not "relat[e] to" the "charged conduct" pleaded in the Complaint—*i.e.*, Defendants' failure to warn and deceptive marketing of fossil fuels, *see* Compl. ¶ 27. *Express Scripts*, 119 F.4th at 179 (requiring that "private actors . . . carried out the *charged conduct* in relation to the asserted official authority" (emphasis added)); *see also Rhode Island I*, 979 F.3d at 59–60.

To evade controlling precedent, Defendants say *Maryland* instructs this Court to "credit *Defendants'* theory of how their conduct is related to Plaintiff's claims." Not. at 3. But Defendants' argument conflates two separate issues that are governed by distinct legal principles. A removing defendant must plausibly allege that "the charged conduct was carried out for or relating to the asserted official authority." *Express Scripts*, 119 F.4th at 186 (quotations omitted). Courts "credit" a removing defendant's "theory of the case" with respect to the *relationship* to federal authority such that, for example, "factual disputes about the scope of a defendant's federal obligations" are resolved in the defendant's favor. *Id.* at 189. But the *charged conduct*—meaning the allegedly wrongful act for which the defendant has been sued—is defined by the allegations in the plaintiff's complaint, not the defendant's self-serving recharacterization of those allegations. In the Fourth Circuit's own words, "[i]t is the 'act' for which the defendant is being sued . . . that must relate to the asserted federal duty," which is "the *conduct charged in the Complaint*." *Anne Arundel*, 94

F.4th at 348 (quotations omitted). In short, no rule authorizes Defendants to "freely rewrite the complaint and manufacture a cause of action explicitly disclaimed by Plaintiff and then ask the Court to accept their 'theory of the case' for purposes of removal." *Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618, 636 n.21 (D. Del. 2022) (rejecting the same argument and remanding a similar climate-deception case).

The decision in *Rhode Island I* illustrates the distinction and the appropriate analysis. The defendants there argued, just as Defendants do here, that Rhode Island "s[ought] damages for harms allegedly caused by greenhouse gas emissions," and that because "some of the emissions-causing oil and gas products were produced and distributed under federal [contracts], federal officer removal [was] proper." Not. at 3; *see Rhode Island I*, 979 F.3d at 59–60. The First Circuit disagreed and affirmed remand:

> At first glance, these agreements may have the flavor of federal officer involvement in the oil companies' business, but that mirage only lasts until one remembers *what Rhode Island is alleging* in its lawsuit. Rhode Island is alleging the oil companies produced and sold oil and gas products in Rhode Island that were damaging the environment and engaged in a misinformation campaign about the harmful effects of their products on the earth's climate. . . . There is simply no nexus between anything *for which Rhode Island seeks damages* and anything the oil companies allegedly did at the behest of a federal officer.

*Id.* (emphasis added). While the court in *Express Scripts* reached the opposite result and reversed an order granting remand, it followed the same chain of reasoning as *Rhode Island I* and recognized that the charged conduct is the defendant's conduct for which the plaintiff seeks relief. *See Express Scripts*, 119 F.4th at 192 ("The Commonwealth claims that how Caremark negotiated rebates inflated insulin prices. But *this 'charged conduct'* is alleged to be indivisibly federal and non-federal." (emphasis added) (citation omitted)).

Here, just as in *Rhode Island I*, the charged conduct in the Commonwealth's Complaint is Defendants' deceptive marketing of fossil fuels, Compl. ¶ 27, not their production or distribution

of fossil fuels. And just as in *Rhode Island I*, Defendants do not allege federal officers influenced their marketing activities at all, so the Commonwealth's claims do not relate to anything Defendants allegedly did at federal direction, and federal-officer removal is improper.

**WHEREFORE**, the Commonwealth respectfully requests that the Court grant the Motion to Remand and award the Commonwealth its costs and fees. *See* 28 U.S.C. § 1447(c).

**RESPECTFULLY SUBMITTED**

**I CERTIFY**: That on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will notify case participants appearing in said system.

In San Juan, Puerto Rico, this 31st day of March 2025.

<div style="margin-left:40%">

By: *S/ José A. Andréu Fuentes*
José A. Andréu Fuentes
**BUFETE ANDRÉU & SAGARDÍA**
261 Ave. Domenech
San Juan, P.R. 00918-3518
Tel: (787) 754-1777
Email: jaf@andreu-sagardia.com

**SHER EDLING LLP**
Victor M. Sher (*pro hac vice*)
Matthew K. Edling (*pro hac vice*)
Katie Jones (*pro hac vice*)
Chase S. Whiting (*pro hac vice*)
Anthony M. Tohmé (*pro hac vice*)
100 Montgomery St., Ste. 1410
San Francisco, CA 94104
Tel: 628-231-2500
Fax 628-231-2929
Email: vic@sheredling.com
        matt@sheredling.com
        katie@sheredling.com
        cwhiting@sheredling.com
        anthony@sheredling.com

*Attorneys for the Commonwealth of Puerto Rico*

</div>